1835.

Leggett
v.
Dubois.

---

### Leggett *vs.* Dubois and others.

Where an alien, for the purpose of evading the law of the state prohibiting him from taking and holding real property, purchases land and takes a conveyance thereof in the name of a third person without any written declaration of trust, a resulting trust will not arise in favor of the purchaser; as equity will never raise a resulting trust in fraud of the rights of the state or of the laws of the land.

A resulting trust is the mere creature of equity ; and it cannot, therefore, arise where the parties have declared an express trust, which is evidenced by a written declaration of such express trust.

The law never casts either a legal or an equitable estate upon a person who has no right to hold it ; although such estate may, for the benefit of the state, be vested in an alien, until office found by an express contract or conveyance.

Where an alien purchases land and takes a conveyance of the same in the name of a trustee upon certain express trusts, with authority to sell the land to satisfy such trusts, the surplus proceeds, if any, belong to the state by escheat, and may be reached by a bill in equity.

So where an alien purchases real estate in fraud of the law of escheat, and takes a conveyance in the name of a third person, either upon an express and declared, or a secret trust to permit the alien to receive the rents and profits thereof, the interest in such trust belongs to the state, and may be enforced in its favor and for its benefit, in a court of equity.

March 17.

THE original bill in this cause was filed in 1828, against Bishop Dubois, and Lynch, Lasala and Wilcox, trustees for the Catholic church in Ann street, in the city of New-York, and against H. Walton, and the Rev. J. Sellon of the Episcopal church, for the specific performance of an alleged agree-

ment made by Sellon, through or by the trustees of "Christ's church, in Ann street," for the sale or exchange of a small strip of land in rear of the church. It appeared by the pleadings and proofs in the cause, that the premises in controversy, together with the residue of the three lots upon Ann street on which the church was erected, belonged previous to the 7th of January, 1823, to a religious incorporation, called "Christ's Protestant Episcopal Church, in Ann street." That the congregation worshipping in that church, or the majority of them, having concluded to remove to Anthony street, they conveyed the three lots fronting on Ann street, with the church thereon, to H. Walton, by an absolute conveyance, bearing date on the 7th of January, 1823 ; which deed was duly recorded. It also appeared that this purchase was made by the Rev. J. Sellon, from the corporation, for $17,500, and the purchase money was paid as follows : $6000 in a mortgage to the Union Insurance Company, then upon the premises, which was to be paid by the grantee ; $4100 advanced by Walton, the grantee, at the time of the purchase ; and $7400 advanced by Baker John Sellon, the father of J. Sellon, and by William Richard Baker Smyth. It also appeared by the answer of Walton, which both parties agreed should be read in evidence upon the hearing so far as it related to the rights of the complainant and his co-defendants, and was responsive to the bill, that this deed, although absolute in its terms, was in fact given to him as a trustee ; because J. Sellon was an alien, and incapable of holding real estate ; and that the premises were conveyed to Walton in trust, to let J. Sellon receive the pew rents and other profits of the premises, and pay the same over to Walton, who was to pay out of the same the expenses of all necessary repairs, and the assessments, taxes and charges upon the premises, the interest on the $6000 mortgage to the Union Insurance Company, the interest on the sum of $4100 advanced by Walton, and the interest on the $7400, advanced by B. J. Sellon and W. R. B. Smyth, and to pay the residue, if any, to J. Sellon ; and upon a sale of the premises, to pay these several sums out of the proceeds of such sale, and to pay the residue of such proceeds, if any, to J. Sellon. Shortly after this purchase, a declaration of trust was execut-

ed by Walton, in conformity to this trust, except that by mistake $3100 was mentioned therein as payable to him, instead of $4100. In June, 1823, further advances having been made by B. J. Sellon and W. R. B. Smyth, a new declaration of trust was substituted, at the request of J. Sellon, in which the amount due to Walton was corrected, and the amount due to B. J. Sellon and W. R. B. Smyth was increased to the sum of $9768 ; making the amount to be paid on the sale of the premises $19,868, besides interest. Shortly after the execution of this last declaration of trust, the residue of the congregation which remained, caused themselves to be incorporated ; and in 1826, J. Sellon and a committee of this new corporation made the agreement with the complainant, of which he sought a specific performance by his bill. This, however, was done without the consent of Walton, who, in May, 1827, sold and conveyed the whole of the three lots fronting on Ann street to Bishop Dubois, for the sum of $19,000 ; which was much less than the amount of encumbrances on the premises, provided for in the declaration of trust, and leaving a balance, including interest, of more than $4000. Upon this purchase by Bishop Dubois, J. Sellon also executed to him a quit claim of all his interest in the premises ; and the Bishop afterwards conveyed to Lynch, Lasala and Wilcox, as trustees for the Catholic congregation. Upon the filing of the bill, an injunction was granted to stay proceedings at law against the complainant to recover possession of the disputed piece of land. J. Sellon having died before perfecting his answer, a bill of revivor and supplement was filed, to which his heirs were made parties. But upon demurrer the bill was dismissed as to them, they having taken no interest in the premises by descent. (*See Leggett* v. *Sellon, 3 Paige's Rep.* 84.) The cause was thereupon heard upon pleadings and proofs, as against the surviving defendants.

*T. Fessenden,* for the complainant.

*J. Lynch,* for the defendants.

1835.

Leggett
v.
Dubois.

THE CHANCELLOR. It is not necessary that I should go into a full examination of the question whether there was a valid parol agreement between the complainant and J. Sellon, partially performed, so as to render it binding in equity as between those parties, notwithstanding the provisions of the statute of frauds; as I am satisfied Walton never assented to any such agreement. And I have arrived at the conclusion that J. Sellon had not such an interest in the premises as could make his contracts in relation thereto binding on Walton or his grantee. If the trust on which the property was held by Walton, could be enforced in favor of J. Sellon in his lifetime, as an alien, it could only have been done by a sale of the premises for the purpose of giving him the surplus, after paying the charges thereon. And it is evident from the pleadings and proofs that the value at the time of the sale to Bishop Dubois, in the spring of 1827, was less than the amount of encumbrances then existing.

It is insisted, on the part of the complainant, that J. Sellon had the equitable right to the property, as a resulting trust, subject to the encumbrances, which were only in the nature of mortgages; and that the complainant has an equitable right to redeem, and to have the benefit of the present value of the Ann street property. It may, therefore, be necessary that I should examine the question as to the nature of J. Sellon's interest, for the purpose of ascertaining whether any such right of redemption exists in this case. He undoubtedly made the bargain for the premises. And if he had not been an alien and incapable of taking and holding real estate, the deed would probably have been given to him directly, and he would have secured those who advanced the purchase money, by mortgages on the premises. But to evade the law by which aliens are disenabled to take real property and hold it against the claims of the state, the deed was given to a third person as a trustee. A resulting trust is the mere creature of equity, as a resulting use is of law; and it cannot, therefore, arise where there is an express trust declared by the parties, and evidenced by a written declaration of such express trust. And equity will never raise a resulting trust in fraud of the laws of the land. It could

not, therefore, in a case like the present, be raised in favor of an alien, in fraud of the rights of the state. The law will never cast the legal or equitable estate upon a person who has no right to hold it ; although an estate may, by an express contract or conveyance, be vested in an alien, until office found, for the benefit of the people of the state. Where an alien, therefore, purchases land and takes an absolute conveyance in the name of a citizen, without any agreement or declaration of a trust, the law will not raise a trust in favor of the alien purchaser, who cannot hold the land ; any more than it would cast it by descent upon an alien heir, who cannot hold it against the state. The result in such a case must be, either that the nominal grantee takes the land, discharged of any trust by mere implication of law, or that there is a resulting trust in behalf of the people of the state, which they alone can enforce against the grantee in the deed. It is not necessary in this case, however, to discuss the question of resulting trust, as there was no such trust here. It is very evident that the trust, whatever it was intended to be, was an express trust from the beginning ; although the writing, which was the evidence of that trust, was not executed until sometime afterwards. This trust was, among other things, to sell the premises when necessary to pay off the encumbrances thereon ; which trust has been executed by the trustee according to the terms of the trust. And J. Sellon could do no act which would destroy or in any way impair that right, without the assent of the trustee and the cestuis que trust. Bishop Dubois, therefore, obtained by his purchase from Walton the legal title to the premises in controversy, discharged of any claim in favor of the complainant. And in this view of the subject, it is perfectly immaterial whether he had or had not notice of the particular trusts upon which the property was held, or of the arrangements made between the complainant and J. Sellon. So far as concerned any surplus which might be raised upon the sale by the trustee, Dubois, as the purchaser was not bound to see to its application. If there had been any surplus, which I am satisfied there was not, it would have belonged to the state by escheat ; and the same

might have been reached in the hands of the trustee by a bill in equity. Upon this subject, it is only necessary that I should refer to the very able and luminous opinion of the distinguished president of the court of appeals in Virginia, as reported in *Hubbard* v. *Goodwin*, (3 *Leigh's Rep.* 514.) The conclusion at which he arrived in that case, and in which opinion I fully concur, was, that where, for the purpose of evading the law which prohibits an alien to hold lands, he purchases real estate in the name of a trustee, upon an express and declared or a secret trust, to be permitted to take and receive the rents and profits, this is such a trust as in reason and upon the well received principles of equity, as well as upon authority, will pass to the state, to be enforced at its instance and in its favor.

In the present case, if the complainant inquired as to J. Sellon's pretended interest in the premises, he must have known that Walton had the right, as trustee, to sell the premises for the payment of the encumbrances thereon, and that no agreement which J. Sellon could make would defeat the rights of the purchaser. And if he neglected to make such inquiries, or to get the assent of Walton to the proposed arrangement, his loss is the result of his own carelessness, and he has no equitable claim to relief, either as against Walton or his grantees. And as I have before shown, J. Sellon had no equitable interest which could pass to Bishop Dubois under his release, charged with a trust in favor of this complainant. The bill must therefore be dismissed, with costs.