Miller *et al. v.* Davidson.

JACOB B. MILLER *et al.*, appellants, *v.* ALEXANDER B. DA-VIDSON, appellee.

*Appeal from Winnebago.*

Where a creditor seeks to satisfy his debt out of some equitable estate of the debtor, which is not liable to a levy and sale under an execution at law, he must exhaust his remedy at law by obtaining judgment and a return of the execution *"nulla bona,"* before he can come into a Court of Equity for the purpose of reaching such equitable estate. This is necessary to confer jurisdiction upon that Court.

Where a creditor seeks to remove a fraudulent incumbrance out of the way of his execution, he may file his bill as soon as he obtains his judgment. In case of a trust, however, where the object of the bill is to establish the existence of the trust and to remove the fund beyond abuse, the party interested in securing his debt may come into a Court of Equity in the first instance, not only for the benefit of himself, but of such other creditors as may choose to avail themselves of the decree and prove their claims.

No principle is better settled, than that where two or more persons embark in an unlawful transaction, and one gets the advantage of the other, and appropriates more than his proportion of the spoils to himself, the Court will not interfere to make him divide with the others.

If a defendant in Chancery demur to the complainant's bill, and his demurrer is overruled, and he decline answering over, he thereby admits all of the allegations of the bill to be true, and he cannot afterwards question the correctness of the decree by denying the truth of those allegations.

The correct practice, on overruling a demurrer in Chancery is, the entry of an order that the defendant answer the bill, and if he neglect so to do, the complainant may have the bill taken *pro confesso,* and the Court will then render the proper decree.

BILL IN CHANCERY, filed by the appellee for the benefit of himself and the creditors of Jacob B. Miller, one of the appellants, in the Winnebago Circuit Court, and heard before the Hon. Thomas C. Browne, at the August term 1846, upon general and special demurrers to the bill. The several demurrers were overruled and a decree entered against the defendants below, establishing a trust in G. B. Udell, one of said defendants, and ordering him to convey the premises in controversy to S. M. Church, in trust, &c. and for costs.

*J. Butterfield,* for the appellants.

*J. Marsh,* and *A. T. Bledsoe,* for the appellee.

1. It is contended, that complainant had no right to come into Equity, because he had not sued and obtained judgment.

at law, and had execution returned "no property found." The authorities cited do not apply to the present case. They apply to cases in which complainants come into Equity because they had no remedy at law; and which want of remedy at law is required to be shown by judgment and return of execution "no property found." But we claim under and by virtue of a trust deed. This trust alone is sufficient to give jurisdiction to a Court of Equity. And, again, as Miller had obtained a discharge in bankruptcy, a suit at law would have been unavailing; it would have been labor and expense to accomplish nothing. The law never requires a man to do a nugatory act.

2. It is said that Miller and Udell obtained a conveyance to the land in question, under and by virtue of an illegal contract. It has been alleged and shown by an abundance of authorities, that Courts of Equity will never lend their aid to afford relief to the parties to an illegal contract. But the parties to the illegal contract in this case are not seeking aid or relief. They set up their own illegal contract as a ground of defence. The defence of the defendants is, that although we are indebted to the complainants, they should not be permitted to take the land in our possession, and to which we hold a title under the patentee, in order to satisfy their debt, because we obtained our title to said land in fraud of an Act of Congress. Can a defendant exempt his property from execution by alleging that he has obtained such property by fraud?

3. The defendants also insist, that it does not appear from the bill that the agreement between Gregory and Miller was in writing, and the Statute of Frauds is set up as a ground of defence.

The Statute of Frauds establishes a rule of evidence and not of pleading. Though the Statute of Frauds should require a contract to be reduced to writing, it is not necessary to aver that this has been done; it is sufficient to prove it by writing. Hence, as the bill is demurred to, this question of evidence does not arise. Gould's Pl. 191, § 43.

The defendants invoke the Statute of Frauds to protect them in their fraudulent gains, as well as to enable them to

perpetrate another fraud. The Statute of Frauds was made for the prevention, and not for the protection of fraud; and it will never be permitted to cover any fraud on the rights of private individuals. Story's Eq. Pl. § 768. On this great principle, many cases have been taken out of the words of the statute.

Again, the Statute of Frauds does not apply to the present case, because the land in question was purchased with the trust funds. 2 Story's Eq. Jur. §§ 1201, 1210.

The Statute of Frauds must be pleaded; it cannot be taken advantage of by demurrer. Story's Eq. Pl. § 761–8. *Kinzie* v. *Penrose*, 2 Scam. 520.

4. Udell cannot set up want of title in Miller, from whom he accepted the trust, in order to enable him to acquire a perfect title in himself. Having accepted the trust, all acts done by him with a view to perfect the title, shall be considered as done for the benefit of the *cestuis que trust.* 2 Story's Eq. Jur. § 1261; *Torrey* v. *Bank of Orleans*, 9 Paige, 663; *Sweet* v. *Jacobs*, 6 do. 363–4. In the present case, there was clearly a resulting trust in favor of the creditors of Miller. 2 Story's Eq. Jur. §§ 1201, 1211, 1261, and the authorities in those sections cited.

5. The simple state of facts, that Miller conveyed his right to the land in question for the benefit of his creditors; that he obtained a discharge in bankruptcy; and that he now seeks a re-conveyance of said land to himself, and for his own use, is sufficient to give a Court of Equity jurisdiction on the ground of fraud, and authorize it to subject said trust property to claims of the *cestuis que trusl.*

The Opinion of the Court was delivered by

CATON, J. This bill was filed by Davidson in behalf of himself, and such others of the creditors at large of Jacob B. Miller as might choose to come in under the proceeding, and claim the benefit of the decree against Miller and Udell. The bill states that the complainant is a creditor of Miller to the amount of $436·06, and that Miller owes large sums of money to other persons.

The bill shows that previous to the 10th of August, 1841,

one Gregory had acquired a pre-emption right to a certain quarter section of land under the pre-emption law of 1838, and also previous to the said 10th of August, Gregory sold his claim to the land to Miller; that Miller held the land till the 15th of December of the same year, although he had in fact before that time conveyed it to one Joslin in trust for himself, and that on that day Joslin, by the express direction and request of Miller, conveyed the same by deed to the defendant, Udell, in trust for the creditors of Miller generally, and that Udell accepted the deed and undertook faithfully to execute the trust. All of these conveyances were only of the claim title to the land, which had not yet been sold by the United States. As no one was entitled to a pre-emption to the land except Gregory, and as he could only obtain that privilege for his own use and benefit, and upon making affidavit in the strongest terms that it was not for the use and benefit of another, and that he had not agreed to sell the same, &c., in order to enable him to prove up a pre-emption, on the 31st of October, 1842, Udell executed a release of the premises to Gregory, and on the same day Gregory gave to Udell his promissory note for $1000, with the understanding that if Gregory, after he should enter the land, should deed the same to Udell, he would give up the note, and if he should refuse to convey, Udell should collect on said note the value of the said claim; and that on or about the same day, Gregory proved up a pre-emption, and on the 19th of October, 1843, paid for and entered the land with money furnished him by Udell, $150 of which he obtained from one Burnap, who was an assignee of Miller of certain choses in action in trust for Miller's creditors, from the trust fund which had been raised by Burnap out of the choses in action thus assigned, and fifty dollars was furnished by Udell for the benefit of Miller's creditors, and at the same time Gregory obtained the Receiver's certificate for the said land. The money furnished by Burnap was the money of the said creditors, and furnished by him at the request of Miller and Udell, expressly for the use and benefit of Miller's creditors, as was also the money furnished by Udell, which was to be

refunded to him, or rather retained by him from the proceeds of the land when it should be sold. On the 10th of November, 1843, Gregory and wife conveyed the land by deed of that date to Udell, except about two acres and a right of way for a State road across a portion of the lot, whereby Udell became seized of said land in trust for said creditors. After receiving the said conveyance, Udell repeatedly declared that he held the said land in trust as aforesaid. The land is worth one thousand dollars, and it is for the interest of the creditors that the same should be sold. Udell has had frequent opportunities to sell the land at that price, but has, under various pretences, refused to do so. Udell always professed to hold the land in trust as aforesaid, till about the 18th of May last, since which time he has denied that he holds the land in trust for said creditors, but declares that he holds the same in trust for said Miller, who has during the same time set up similar claims. Sometime in the year 1842, Miller was duly declared a bankrupt under the bankrupt law of the United States and discharged from his debts. Sometime since Udell become seized of the land, he has executed to Miller an agreement to convey the land to him in violation of his obligations as trustee.

This is substantially the case made by the bill, to which a demurrer was overruled by the Court and a decree entered establishing the trust, removing the said trustee, and appointing another in his place, and directing the premises to be sold, and the money to be brought into Court to be distributed among the creditors of Miller generally. The decree also secures to Udell the fifty dollars advanced by him towards the purchase of the land, as also a reasonable compensation for his services while acting as trustee.

The jurisdiction of the Court is questioned, because the complainant Davidson is not a judgment creditor, and has not exhausted his remedy at law. The cases cited in support of this position, we think, have been misapprehended. Where a creditor seeks to satisfy his debt out of some equitable estate of the defendant, which is not liable to a levy and sale under an execution at law, then he must exhaust

Miller *et al. v.* Davidson.

his remedy at law by obtaining judgment and getting an execution returned *nulla bona,* before he can come into a Court of Equity for the purpose of reaching the equitable estate of the defendant; and this is necessary to give the Court jurisdiction, for otherwise it does not appear but that the party has a complete remedy at law. That is what may be strictly termed a creditor's bill. There is another sort of creditor's bill very nearly allied to this, yet where the plaintiff is not bound to go quite so far before he comes into this Court, and that is where he seeks to remove a fraudulent incumbrance out of the way of his execution. There he may file his bill as soon as he obtains his judgment.

There are some peculiar cases, however, where a party seeks a satisfaction of his debt directly, in which he may come into a Court of Chancery in the first instance, without first obtaining a judgment. Thus, in the case of *Russell* v. *Clark's Ex'rs,* 7 Cranch, 87, C. J. Marshall says: "If a claim is to be satisfied out of a fund, which is accessible only by the aid of a Court of Chancery, application may be made in the first instance to that Court, which will not require that the claim should be first established in a Court of Law." Although the jurisdiction of the Court in this case might, perhaps, be sustained upon this principle, yet it may be placed upon higher and more unquestionable grounds, and that is, its peculiar right to declare and enforce trusts. This Court has jurisdiction of the subject matter in all cases of trusts, and it is abundantly competent, itself, to inquire whether the party claiming to be *cestui que trust,* be so or not. If it be established that Udell holds this land as trustee for the creditors of Miller, then the complainant, if he be one of those creditors, no matter for what amount, shows himself to be one of the *cestuis que trust,* and establishes his right to invoke the aid of a Court of Equity, to prevent the trustee from abusing the trust. For the purposes of jurisdiction, the amount of his debt against Miller, or of his interest in the trust fund is entirely immaterial, as he has a right to complain if he shows himself interested. Davidson does not seek a satisfaction of his debt specifically, but the

bill is filed by him for the benefit of himself, and such others of Miller's creditors as may choose to come in under the decree, and prove up their debts and claim its benefits. The primary object is to establish the existence of the trust, and to remove the fund beyond the reach of abuse. This is one of the most common branches of Equity jurisdiction, and can admit of no sort of doubt.

In this case, the bill was demurred to by the defendants, the demurrer was overruled, and they have declined answering over. In such a case, they admit all of the allegations of the bill to be true, and cannot question the correctness of the decree, by denying the truth of the statements of the bill; 3 Eq. Dig. 71, § 7, where it is said: "A demurrer admits the allegations in the bill as against the demurring party only," and refers to *Penfold* v. *Nirme*, 5 Sim. 405. See, also, the opinion of Woodworth, J., 4 Cowen, 696. That the bill makes out a trust in Udell for the benefit of Miller's creditors generally, cannot be denied; and it is equally clear that the complainant, Davidson, was a creditor of Miller at the time of the creation of the trust, and, consequently, one of the *cestuis que trust.* It was inquired, where is the proof fixing the amount of the complainant's debt, as established in the decree? As between the complainant and the defendants, that was established by the bill, which they have admitted to be true. As between the complainant and the other creditors of Miller, it is not established, for, like them, he will have to prove up his debt before the Master, upon a proper reference, before he will be entitled to his proportion of the fund.

But the principal ground relied upon for the reversal of the decree is, that the title to this land having been obtained from the United States by a fraud upon the law, a Court of Equity will not soil its hands by interfering with it, but will leave the parties where it finds them; that it will leave each party to enjoy all that he has been able to obtain in the iniquitous transaction. No principle is better settled, than that where two or more persons embark in an unlawful transaction, and one gets the advantage of the others, and

appropriates more than his proportion of the spoils to himself, the Court will not interfere to make him divide with the others. As they commenced with a violation of the law, they cannot invoke its aid in any way. The law will not meddle with gains obtained by its own outrage, as between those who have been engaged in trampling it under foot. This, however, is not out of regard to the one who claims immunity from having violated the law, but it is because he who complains is equally guilty. In the case of *Holman* v. *Johnson*, Cowp. 343, Lord Mansfield says: "The objection that a contract is immoral or illegal, as between plaintiff and defendant, seems at all times very ill in the mouth of the defendant. It is not, however, for his sake that the objection is ever allowed, but it is founded in general principles of policy, and whenever, from the plaintiff's own stating or otherwise, the cause of action appears to arise from the transgression of a positive law of the country, he has no right to be assisted." This is a defence which the guilty is allowed to set up against his associate in guilt, as a sort of punishment for the participation of the latter in the violation of the law. It is the guilty, and not the innocent, which it is the policy of the law to punish.

And now, how is it in this case? Miller, having an interest in this land which is recognized and protected by the laws of this State, conveyed the same to Joslin in trust for himself. Joslin, at the request of Miller, conveyed the same to Udell, in trust for Miller's creditors generally. Udell accepted the trust. Miller then ceased to have any interest in the land, excepting what might remain after the payment of all his debts, and his creditors became the *cestuis que trust*, who thereby acquired an interest in the trust estate. Here, then, was a trust fund in which the creditors of Miller were interested, and which was tainted with no violation of, or fraud upon the law. It may be conceded, for the purposes of the present inquiry, that Udell and Gregory entered into a conspiracy to practice a fraud upon the law, in obtaining the land from the United States, and still it is far from proving that, by this illegal act, he is not only to retain

what he thus iniquitously defrauded the Government of, but shall also be permitted, as a reward for his iniquity, to defraud his *cestuis que trust* out of the trust estate which he honestly held for them. That, indeed, would be a refinement in fraud which a Court of Equity was never before called upon to sanction. Had the *cestuis que trust* participated in the fraud, then the Courts would refuse to interfere as between them and their trustee; but that is not pretended, and it seems to me that it would be a monstrous doctrine, that the trustee, by enhancing the value of the trust estate by practicing a fraud upon the law, thereby closed the doors of a Court of Equity against his *cestuis que trust*, when he refuses to perform the trust. That would be taking advantage of his own wrong most emphatically.

I take it, that this rule, that the Court will not interfere as between the *particeps criminis* to an illegal transaction, is not to be applied where the Court can find an innocent party, in favor of whom the trust may be established; for the Courts will seize every opportunity of preventing a guilty party from enjoying the fruits of his iniquity, where they can do it without interfering in favor of one who is a party to the guilt. Such was the principle laid down in the case of *Leggett* v. *Dubois*, 5 Paige, 119, where the Chancellor says: "Upon this subject it is only necessary that I should refer to the very able and luminous Opinion of the distinguished President of the Court of Appeals in Virginia, as reported in *Hubbard* v. *Goodwin*, 3 Leigh's Rep. 514. The conclusion to which he arrived in that case, and in which Opinion I fully concur was, that where, for the purpose of evading the law which prohibits an alien to hold lands, he purchases real estate in the name of a trustee, upon an express and declared, or a secret trust, to be permitted to take and receive the rents and profits, this is such a trust as in reason, and upon the well received principles of Equity, as well as upon authority, will pass to the State, to be enforced at its instance and in its favor." Here, then, we see, that although a trust may be created in violation, and clearly in fraud of the law, still the trustee shall not be

permitted to hold the trust estate discharged of the trust, although the *cestui que trust* is equally guilty with the trustee, and is incapable of holding the trust property, either in law or equity; but the trust shall be established and enure to the benefit of the State to which the estate would have been perfected had the title been taken directly by the *cestui que trust.* In the case before us, if Udell has been guilty of the fraud upon the law which he alleges in the defence which he sets up, that he has, it may be that the Government may proceed in the proper Court to have the sale set aside; but till that be done, the title is as good as if it had been obtained ever so fairly, and it cannot be permitted to the trustee to allege, that because he has defrauded the Government in obtaining the land, he shall thereby be enabled to defraud his *cestui que trust* out of the estate confided to him for their benefit. Courts of Equity will take care that trustees, of all others, shall act in the utmost good faith towards their *cestuis que trust,* and that they shall not be permitted to speculate out of the trust estate in any way, for their own benefit; and if they attempt to do so, the Courts will hold all such speculations to be for the benefit of the trust fund. So soon as Udell consented to act as trustee, he assumed the obligation, that whatever he did with the trust estate, should be for its benefit alone, and he is estopped from claiming any advantage under it. He cannot be permitted to act for himself while he is bound to act for others. Upon these principles, whether he purchased the land with his own funds, or with money belonging to his *cestuis que trust,* the purchase shall, in either case, enure to their benefit. In this case, at least three fourths of the money, in equity, belonged to them, and in the distribution of the proceeds of the sale of the land, the Court will refund to him the fifty dollars which he advanced out of his own money. That the Court acted judiciously in removing him, and appointing another trustee, no one can doubt, after he had denied the existence of the trust, and had undertaken to convey the land to Miller, who had originally created

the trust, he being placed beyond the reach of his creditors by his discharge under the bankrupt law.

Upon an application of the creditors to the Court below, a reference will of course be made to the Master, to give public notice to the creditors to come in, within some reasonable time, and prove up their debts, that the fund may be distributed according to the decree.

It may not be improper here to remark, that the correct practice is not to render a decree directly upon overruling a demurrer to a bill in Chancery; but the order should be, that the defendants answer the bill, and if they neglect to do so, the complainant may have the bill taken for confessed, and the Court will proceed to render a decree as in other cases where bills are taken for confessed. But the deviation from the correct practice in this case, is but an irregularity which the Court here will not notice, particularly as it is not assigned for error. The Court may, in its discretion, render a decree at once upon a bill taken for confessed, especially where a demurrer has been overruled to the bill.

The decree of the Circuit Court is affirmed with costs, and the cause remanded for such further proceedings as may be agreeable to equity in the premises.*

*Decree affirmed.*

---

*A petition for a re-hearing was filed by the counsel for the appellants, which was denied.