Ruffin, C. J.
 

 This cause was heretofore heard and a decree made, as reported, 2
 
 Ired Eq. 58,
 
 & 423; and it has been now reheard upon the petition of the defendants, the Forestiers, the grand-children of the testator’s sister Quenet, to have that part of the decree reversed, by which it was declared, that, by reason of their alienage, they could not take the real estate under the devise to the plaintiffin trust for them.
 

 The provisions in the will,on- which the question arises, are these. After giving a number of pecuniary legacies and annuities, the testator says: “ I give the balance or
 
 *208
 
 residue of my property to my executor in trust for the benefit of my sister Quenel’s grand-children by the name of Forestier, to be paid to any one of them who should apply for the same, subject, however, to the payment of the legacies made in this will, and, moreover, obligatory on them to the payment of $100 yearly to their grandmother Quenet during her life, and after her decease, the game sum of
 
 $
 
 100 to be paid to their own mother yeariy.also during her life. But should no one of my sister Quenel’s graud-children, nor any one, duly authorised to receive the above property in their behalf, apply within two years from the time of my decease, then the above property to revert unto Mary C. Kron’s children, and be distributed equally amongst them, subject, however, to the legacies herein mentioned. By subsequent clauses the testator gave to his wife a child’s part of his personal estate, and directs how her share of his slaves shall be allotted, and then he adds: “I wish that all my perishable property be sold to the highest bidder as usual, at nine months credit. I wish that my lands be leased or rented out to the best advantage, and also that my negroes, my wife’s share excepted, should be hired out to the highest bidder as usual in such cases, except such as are hereafter mentioned; and 1 wish that the ready cash, which I may have at my decease and shall remain after the legacies are paid, together with all the moneys arising from the renting of the lands and hiring of the negroes and the collection of the notes and money due me, should be lent out on interest to responsible people giving bond and approved security for the payment thereof.” Then follows a particuular provision respecting one of his negroes, named David, and his family, that they should live together on a certain piece of his land'and support themselves there until the children of Charity, one of David’s daughters, should attain the age of 21, and then that Charity’s children be returned to the common stock, as each of them
 
 *209
 
 may attain that age, but that David and his wife should remain in possession of that land during their lives.
 

 That part of the decree, which the petition brings under review, was founded on two propositions, that aliens cannot hold land, but that the sovereign may take it; and that a trust of land for an alien stands upon the same footing, and cannot be enforced by the alien, but may be by the sovereign in equity. Each position was considered at the time so firmly settled as to be indisputable, and in fact neither was disputed; so that it was not deemed necesisary to cite an authority in support of them. The question, whether the aliens can take benefit by this devise,has now, been fully argued ; and the Court has attentively considered the whole subject; but without being able to reach a result different from that declared in the decre.e. -
 

 It is said, that the intention of the testator was, that his' land should be sold and the proceeds go to the alien donees ; and, if that be not so, that at all events the law should leave it to the
 
 cestui que trust
 
 to elect, to have it sold and take the procec-ds, which would avoid any violation of the policy, Avhich excludes aliens from real estate.
 

 But it is clear, that the trust is not of the special nature insisted on, for a sale of the land and payment of the money to these parties, but that the devise is simply a devise of the land to the executor in trust, generally, for the grand-children of Mrs. Quenet. Had those persons been citizens, no one Avould have thought, that the trust was to make a sale without the orders of the
 
 cestui que trust f
 
 and Ave think it clear', that a purchaser from the executor would not have a good title against the Forestiers, without their concurrence in the sale. Some stress was laid in the argument on the expression “ to be
 
 paid to
 
 any one of them,” as denoting the intention to sell.- But that is not sufficient. The testator AVas himself a native of France#
 
 *210
 
 and obviously did not understand the English idiom ; and it is plain that he used the term “ paid” inaccurately. For it is the residue of“ my property,” which is to be
 
 “
 
 paid,” according to the grammatical construction ; in which sense that word cannot propt rly be used. The testator meant by those words only to express the intention ; that, though the gift was
 
 to all Mrs.
 
 QuenePs grand-children, it might “be paid
 
 to any
 
 one of them.” or that any one of them, or, as afterwards more fully expressed, any one else duly authorised, might “receive the above property in their behalf.” There was no intention by the will to convert the real estate. So far from it, the expression just mentioned, “receive the above property,” shews that the trust was of the
 
 corpus
 
 specifically. Besides, while the testator is so particular as to direct the terms of a sale of the most unimportant perishable part of his estate, he gives no direction about the sale of any part of his land ; but, on the contrary, he orders that certain negroes should live on one tract of the land during their lives, for the benefit of the devisees and legatees, and that the other land should be leased by the executor, and the rents invested in securities bearing interest, until, as we suppose, it should be ascertained, who. under the contingencies in the will, would become entitled to the estates. The trust, then is not one for conversion, but is merely the common one of a devise of land to one person to hold it, as land, in trust for another. Upon the death of 9,
 
 cestui que trust,
 
 undoubtedly
 
 the right
 
 would descend
 
 to
 
 his heir, and not go to his executor. Thus viewed, the Court holds, that the aliens could not hold under the devise.
 

 Jt cannot be disputed, that an alien cannot take land by apt of law } or, though he may take by purchase, that he pannot hold land against the sovereign, who may take it upon office found. Co.
 
 Lit.
 
 2
 
 v.
 
 It is the nature of a trust, to be subject in equity to the same rules, as to its acquisi
 
 *211
 
 tion and alienation and the succession to it, as the legal estate is. Hence, on the principle of
 
 equitas sequitur le~ gem,
 
 those persons only, who may purchase and hold the legal estate, may purchase and hold the equitable.
 
 Lewin on Trusts,
 
 105. And in respect to an alien, Chief Baron Gilbert lays it down as clear law, that he cannot compel the feoffee to uses to execute a use to him He gives as the reason, that it is contrary to the policy* of the law, that an alien should implead touching lands in any Court of the country. Therefore, he says, the King shall have the use of an alien upon his purchase ; for the inconvenience is the same, if the interest be the freehold at law, or the trust: the only difference being, that at law he can seize the land on office found, while in the case of a trust he cannot, but may have a subpmna in Chancery to have the trust executed to him.
 
 Gil. Law of uses,
 
 43. These positions are fully supported by the opinion of Lord Hale in
 
 The Attorney General
 
 v.
 
 Sands,
 
 Hardres 488, and more particularly as it is given in
 
 The Attorney General
 
 v.
 
 Duplesis,
 
 Parker’s Rep. 145, by Chief Baron Parker from a copy of Lord Hale’s own manuscript argument in which the Chief Baron entirely coincides. The words are: “ If an alien be
 
 cestui que trust
 
 at this day of an inheritance, the trust shall be executed in a Court of Revenue for the King. The reason is, becanse the alien has no capacity to purchase for any but the King, because of the infinite inconveniences that might follow by letting in aliens to the possession of land.” Lord Hale further said, that he was of Counsel in
 
 Holland’s case,
 
 which is stated in
 
 The Duke of York
 
 v.
 
 Marsham,
 
 Hardres 336 ; and that “ there the King was entitled upon account of the incapacity of the alien to purchase; and though the King could not have the interest in point of law, and an information of intrusion would not lie,” (because the legal estate was in a subject)
 
 “
 
 yet by a bill in equity it might have been decreed.” Upon these authorities the doctrine is adopted by Chief
 
 *212
 
 Baron Comyns, and is laid down by him in nearly the same words.
 
 Com. Dig. Alien,
 
 c. 3 ; and it is found unquestioned in the later text books. In
 
 Leggett
 
 v. Dubois, 5 Paige 114, Chancellor Walworth held, that where an alien purchased land and took a conveyance to a trustee, with authority to sell the land to satisfy certain express trusts, and there was a surplus of the proceeds, it belonged to the State and might be recovered in equity. He stated, that the same opinion had been given by the Court of Appeals in Virginia in the case of
 
 Hubbard
 
 v.
 
 Goodwin,
 
 reported in 3 Leigh’s Rep. 514, a book not at this moment within our reach; in which the general conclusion is stated, that, where an alien purchases land in the name of another upon an express and declared secret trust to be permitted to receive the profits, the trust passes to the State, to be enforced in its favour in the Court of equity ; and in that conclusion Chancellor Walworth expresses his full concurrence. In
 
 Fourdine v. Gowdy,
 
 3
 
 Mylne and Keene,
 
 383, where one, having free hold and lease hold lands, directed all his property to be sold by his executor, and turned into money with injunction on his heir at law to concur in the sale, and, after the payment of certain legacies thereout, he bequeathed the residue to his alien sister and three brothers, one of whom was his heir,, Sir John Leacii held, that the brothers and sisters could not take the proceeds of either the freehold or leasehold properly, because “ aliens could no more take an interest in land (which this would be) than the land itself.” It is
 
 to
 
 be observed, that there was a clear intention to convert, so that what the brothers and sisters should get should go to them as money ; and yet they could not hold it, but it was decreed to the Crown. It has been supposed, that the decision may have been influenced by the circumstance, that there was no devise of the land in trust, but a power to the executors to sell the land, leaving the legal estate in the heir; and the Master of the Rolls let
 
 *213
 
 fall some expressions calculated to give colour to the supposition. But it seems certain, that the decree was not founded on that, at all; for, first, the injunction on the heir to unite with the executors in selling seems sufficient to have turned him into a trustee for that purpose, if the legal estate could have descended to him as an .alien ; and, secondly, that reason could have no application to the leaseholds, which vested in the executor
 
 virtute officii;
 
 and yet the aliens could not get the proceeds of them more than those of the freeholds. That shows that the judgment went upon the general principle, that neither land, nor the produce of any estate in land, can be effectually given to aliens or in trust for them. Chancellor Kent, in treating of the disabilities of aliens, cites several of the foregoing authorities and from them adopts the conclusion, that they are under the like disabilities, as to uses and trusts arising out of real estates, as they arc with respect to the land itself, and that the Sovereign may in Chancery compel the execution of the trust. 2
 
 Kent’s Com. 62.
 
 lie, however, mentions, that when there is a devise upon an express trust to sell and pay the proceeds to aliens, the gift may be supported as a legacy of the money; and for that he cites as the leading one on the subject the American case of
 
 Craig
 
 v.
 
 Leslie,
 
 23 Wheat. 563, in which the devise was to four persons also executors — of “all my estate in any part of America in special trust, that the aforementioned persons will sell my personal estate to the highest bidder, and my real estate on one, two, and three years credit: In the second place, I give and bequeath to my brother Thomas Craig, of Scotland, all the proceeds of my estate, both real and personal, which I have herein directed to be sold, to bo remitted to him, a,s the payments are made, by my said trustees and executors ;” and upon it the Supreme Court of the United States held, that the brother, and not the State, took the proceeds of the land, because it was “considered as a bequest of personal estate, which the
 
 *214
 
 alien could take.” It was contended in the argument at the bar against the decree, that, although there be not an express trust to sell and pay the money to the donees, yet the Court ought to imply it, if necessary to effectuate the intended bounty of the testator, or, at least, will allow an election to the
 
 cestui que trust;
 
 and in support of that position
 
 Craig
 
 v.
 
 Leslie
 
 was chiefly relied on. If that position had been adjudged in that case, it could not have over-ruled the ancient doctrine, which has been shewn to have been so long and so thoroughly established. For this notion of an election equally applied to every
 
 one of the
 
 old cases as well as to this. It amounts to this, that an alien may commit a fraud on the law by buying in the name of a citizen, and whenever the sovereign discovers the trust and is about enforcing it for the public benefit, upon the ground of its violation of the public policy, the alien may say, he will stop the fraud there, and order his trustee then to sell the land and pay him the money. But the Courts could not yield to such an application; but as is laid down in
 
 Leggett
 
 v.
 
 Dubois,
 
 equity will not imply a trust in favor of an alien,in fraud of the law or the rights of the State. In truth, however,
 
 Craig
 
 v.
 
 Leslie
 
 establishes no such proposition, as that contended for by the counsel, but quite the contrary. The Court proceeded on the ground of the express trust to sell and remit the money abroad, as a conversion out and out, and did not mean to deny the principle, that an alien cannot hold the trust of land; for the first paragraph of Judge Washington’s opinion is, that the incapacity of an alien to take and hold beneficially, a legal, or equitable estate in real property is not disputed ; and that the inquiry in that case was, whether the clause in the will was to be construed as a bequest of personalty, or as a devise of the land itself. That it was the former, was the opinion of the Court; and therefore it has no application to the present case. Nor has the other case, ci
 
 *215
 
 ted at the bar. of
 
 Du Hourmelin
 
 v.
 
 Sheldon,
 
 1 Beavan 79, before Lord Langdale, and 4 Mylne and Craig 525. before Lord Cottenham, on appeal, any more application to it. There a testatrix devised real estate to trustees in trust to
 
 sell
 
 and divide the produce among aliens and others, with a direction that the purchaser might pay the purchase money to the trustees, whose receipts should discharge the purchasers from seeing to the application of the money. A sale was made under a decree on a bill to have the will established and the trusts carried into exectuion ; and upon the ground of the provision in favor of the aliens, the purchasers excepted to the Master’s report, that a good title could be made ; but the exception was over-ruled. In the first place, as the case came up for decision, the question was not as to the right to the proceeds of the sale, but merely as to the purchaser’s title; and, as to that, there could be no doubt, since there was an express direction in the will lor a sale, and the purchaser was only to see that his money went into the hands of the trustees, or, as we suppose, was paid into Court in the cause in which the trustees were parties. It is indeed, true that both upon the original hearing and on the appeal, opinions were unequivocally declared in favor of the gifts to the aliens, and Sir John Leach’s judgment in
 
 Fourdine
 
 v.
 
 Gowdy
 
 would probably have been overruled had the occasion called for it. But both of the Judges in
 
 Du Hourmelin
 
 v.
 
 Sheldon,
 
 like the Court in
 
 Craig
 
 v.
 
 Leslie
 
 held the gifts
 
 to the
 
 aliens to be good, simply because they were bequests of personalty, arising out of express trust to sell the land, and pay the produce, as money, to the alienees. Our duty does not call on us to advocate, at present, either side of the controversy between the eminent Judges mentioned, and, certainly, without the necessity there is but little inclination to the task; and that necessity does not exist here. For. whether Sir John Leaoh or Lord Cottenham be right, our
 
 *216
 
 judgment is to be the same ; as it is expressly admitted by the Lord Chancellor, who says, in so many words, that there was, in that ease, an absolute conversion ; that the testatrix gave the legatees no option, that is, to take the produce of the land or the land itself; and,therefore,that the question was untouched by the decisions, that aliens cannot enjoy, against the Crown, trusts of land, anymore than the land itself. Our case, therefore, is altogether out of that decision, or the reasoning on which it was made. Indeed, the principle, on which this decree went, is explicitly admitted by Lord Cottenham, and its operation avoided by shewing, that there the trust for the alien was not of the land, but the money.
 

 The Court then looks upon the disability of an alien to hold as
 
 cestui que trust
 
 of land, as placed, beyond all question, upon both principle and authority. When, therefore, the testator’s trustee and executor asked, whether he ought to execute the trust, in respect of the real estate in favour of the aliens, the Court was obliged to declare, that he ought not, and that against them the soverign was entitled. Whether the State should in this particular instance take, as between it and the children of Mrs. Kron, the devisees substituted for the aliens, was another question: with which the aliens had and yet have, nothing to do, and which is not now open for discussion. • But, as to the exclusion of the aliens, no one of the Court doubted, when the decree was made ; and upon a rehearing no one of the Court now doubts.
 

 The counsel for the Krons, availing himself of fiis privilege of re-examining the whole decree upon the rehearing at the instance of the opposite party, has urged that the decree was erroneous in making the real estate, in their hands, contribute,
 
 pro rata
 
 with the personaltyj to the legacies and annuities to themselves and others ill this country. That question was much discussed among the Judges, who made the former decision, and all the
 
 *217
 
 reasons and authorities, that could be commanded on either side, were then adduced. They have now been carefully reviewed and the able argument of the counsel deliberately considered; and without being able to add any thing material to what was formerlysaid in support of the opinion of the majority of the Court, we 'find those reasons satisfactory to our minds. We think, the principle is clear, that when the law separates the real and personal estate,which the testator gave together to the same persons, subject to charges ; and then gives one portion of the property to one set of persons and the other portion to another set, it must in like manner apportion.the chargee. The fund and the encumbrance ought to go together.
 

 I am therefore instructed to declare it to be the unanimous opinion of the Court, that there is no error in the decree in the matters alleged. The applicants must pay the costs of the rehearing.
 

 Pur Curiam.
 

 Decree accordingly.