BRANDIES & Others *v.* COCHRANE & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE NORTHERN DISTRICT OF ILLINOIS.

Argued November 17, 18, 1884.—Decided December 1, 1884.

F conveyed to W, as trustee, real estate in Illinois on trust to permit F's
wife to use and occupy and receive the rents and profits during her life-
time and to her own use, and at any time to convey on the written request
of F and the wife, to the person designated, and in case of the wife's death
in the husband's lifetime to convey to the husband for life with remainder
to their children : *Held*, That, under the laws of Illinois in force when the
rights of the parties became fixed, a judgment creditor of F had no lien at
law upon his interest in the property, and could acquire one only by filing
a bill in equity.

At the common law (in force in Illinois when the rights of the parties became
fixed), the lien of a judgment against one having a power of appointment,
with the estate vested in him until, and in default of, appointment, was
liable to be defeated by execution of the power, even though the purchaser
had actual notice of the judgment.

The general doctrine in equity that where a person has a general power of
appointment, and executes this power, the property appointed is deemed,
in equity, part of his assets, cannot be invoked to support a claim of a
judgment lien at law upon the antecedent estate, which the exercise of the
power had displaced.

This was a bill in equity, filed by the appellants, the object
and prayer of which was to quiet their title to the real estate
described, situated in Chicago, as against the adverse claims of
the appellees. The question in the case was whether the ap-
pellants had the legal title to the premises in controversy.
The facts necessary to its determination were as follows :

In March, 1866, the complainants below, now the appellants,
recovered a judgment in the Circuit Court of the United States
for the Northern District of Illinois against Robert Forsythe,
one of the appellees, and George T. Braun, for $9,665.49 and
costs, on which execution was issued during the year, and re-
turned not levied, because no property was found on which to
levy.

Prior thereto, in 1861, Robert Forsythe had purchased the
real estate described in the bill, with his own means, from
Horatio G. Loomis, and, according to his directions, a deed

was made by Loomis conveying the property to William R. Arthur, as trustee, and to his heirs and assigns, upon the following trusts therein expressed: "To permit Mary E. Forsythe, wife of Robert Forsythe, of Chicago, to use and occupy, enjoy and receive the rents and profits of said lands and premises, for her life and to her own use, and at any and all times, upon the order or request in writing of said Mary E. Forsythe and the said Robert Forsythe jointly, to convey said lots, or either or any part of them, to such person or persons as they may designate; and in case said Mary E. shall die without issue in the lifetime of her said husband, then to convey said lands to said Robert Forsythe for life; immediately after the decease of said Mary E., to hold to him and his use for life, and to his child or children, if any lawfully begotten, in fee simple and remainder, to their use and to them equally as tenants in common. But if said Robert shall die without lawful issue, then to the children of his brother, Leonard E. Forsythe, and the children of Lydia T. Warrack who may be in being at the time of said Robert's decease, in fee simple and remainder, to their use and to them equally as tenants in common. And in case said Robert shall die without lawful issue in the lifetime of said Mary E., then to convey said lands and premises to her for life immediately after the death of said Robert, to hold to her and her own use for life, and to the children of said Leonard E. Forsythe, and the children of said Lydia T. Warrack, who may be in being at the time of said Mary's decease, in fee simple and remainder as aforesaid, to their use and to them equally as tenants in common. But if hereafter said Robert shall have child or children born of his said wife or of any future wife, then instead of the conveyance aforesaid to the children of said Leonard E. Forsythe and Lydia T. Warrack, said trustee is to convey said lands to said Mary E. or to said Robert (as the one may chance to survive the other), to her or his use for life as aforesaid, and to the child or children who may be so born to them or him, in fee simple and remainder, to their use and to them equally as tenants in common."

Subsequently, upon proper proceedings for that purpose, this

deed was reformed and corrected by a decree in chancery, whereby it was provided that the conveyance of said Arthur, the trustee, to be made on the request of the said Robert and Mary E. Forsythe, when made, should be in fee simple absolute, and should operate to cut off the several trusts thereafter specified in said original conveyance to Arthur.

This property was improved by Robert Forsythe by the erection thereon of a dwelling-house, and was occupied by himself and wife as a residence at the date of the recovery of the appellants' judgment and subsequently during the life of Mrs. Forsythe.

Robert Forsythe, on March 26, 1868, was, on his own petition, adjudged a bankrupt by the District Court of the United States for the Northern District of Illinois, and on July 21, 1868, obtained his discharge.

On November 3, 1869, Robert Forsythe and Mary E. Forsythe joined in a written request to Arthur, the trustee, directing him to convey the premises in controversy to Nathan Corwith, in fee simple. Mrs. Forsythe died on January 1, 1870, leaving no issue, and on January 4, 1870, Arthur, in pursuance of the appointment previously made, conveyed the property to Corwith, as directed. This conveyance was in form absolute, but it is claimed that it was intended merely as security for an indebtedness due to Corwith from Forsythe. At any rate, Corwith conveyed the property to Robert Forsythe by a deed dated March 12, 1870, and the latter, by a deed of trust dated March 10, 1870, in anticipation of the conveyance to himself, conveyed it to George Scoville, as trustee, to secure to John Cochrane $15,000 which the latter had lent to Forsythe, and out of which Corwith had received the amount due him.

On May 9, 1870, the appellants caused an alias execution to be issued on their judgment and levied on the premises as the property of Robert Forsythe; on June 7, 1870, it was sold under this execution to them, on a bid of the amount due on their judgment, and on September 9, 1871, the time for redemption having elapsed, they received a deed from the marshal conveying the title to them.

Robert Forsythe being in default for non-payment of interest

on the debt to Cochrane, Scoville executed the power of sale under the deed of trust to him, by a sale to James D. Wallace on April 17, 1872. The latter had, just prior thereto, on March 8, 1872, acquired whatever title to the premises, if any, had vested in the assignee in bankruptcy, by a sale and conveyance thereof from him. Thereupon Wallace re-conveyed the premises, with some additional property, to George Scoville, as trustee, to secure the whole amount of principal and interest due to Cochrane, amounting, with the expenses of the transaction, to $17,000, the amount specified in the deed of trust. This arrangement was made for the better security of the debt due to Cochrane, John Forsythe having become, in consideration thereof, a guarantor of the notes given therefor.

On May 27, 1872, the complainants, having taken possession under their claim of title, filed the present bill of complaint, to which Wallace and Robert Forsythe were made defendants, praying to have their title quieted as against them.

On May 1, 1876, Scoville executed the power of sale under the deed of trust to him, and sold the property embraced therein, including the premises in controversy, to Cochrane, who, on July 13, 1876, was admitted as a party defendant, and filed his answer and cross-bill, claiming title in himself, and praying for a decree for relief. On final hearing, the original bill was dismissed and a decree rendered upon the cross-bill of Cochrane as prayed for. An appeal was taken from that decree.

*Mr. John S. Monk* for appellants.—I. On the face of the trust conveyance, an interest was given to Robert Forsythe, on which the lien of appellants' judgment attached. The words used being insufficient to raise a trust for the separate use of the wife, the deed, in effect, gives the first life estate to Robert, with remainder to Mary for life. *Bowen* v. *Sebree & Wife,* 2 Bush, 112; *Wade* v. *Fisher et al.,* 9 Richardson Eq. 362; *Chipchase* v. *Simpson,* 16 Sim. 485; *Wills* v. *Sayer,* 4 Madd. 409; *Kensington* v. *Dolland,* 2 Myl. & K. 184; *Austin* v. *Austin,* 4 Ch. D. 236; *Tyler* v. *Lake,* 2 Russ. & Myl. 183; *Hartly* v. *Hurle,* 5 Ves. 540. Conceding the trust to be for her separate use, Robert took a vested remainder for life. *Jull* v. *Jacobs,*

3 Ch. D. 707; *Lainson* v. *Lainson*, 18 Beav. 1; *Weston* v. *Weston*, 125 Mass. 268; *Darling* v. *Blanchard*, 109 Mass. 176; *Wight* v. *Shaw*, 5 Cush. 56; *White* v. *Curtis*, 12 Gray, 54; *Blanchard* v. *Blanchard*, 1 Allen, 223. The lien of the judgment attached to Robert's interest, whether vested or contingent. *White* v. *McPheeters*, 75 Mo. 286; *Williams* v. *Amory*, 14 Mass. 20; *Kelly* v. *Morgan*, 3 Yerg. 437; *Lockwood* v. *Nye*, 2 Swan, 515; *Wiley* v. *Bridgman*, 1 Head, 68; *Burton* v. *Smith*, 13 Pet. 464; *Tyndale* v. *Ware*, Jacobs, 212; *Smith* v. *Angell*, 2 Ld. Raym. 783.—II. Was the lien divested by the exercise of the alleged power of appointment? (1.) Forsythe's interest having passed to the assignee in bankruptcy, subject to the lien of the judgment, could not be defeated, nor the lien displaced by a subsequent exercise of the power. *Doe* v. *Britain*, 2 B. & A. 93. (2.) The power was extinguished *pro tanto* by the judgment. *Carr* v. *Holford*, 3 Ves. 650; *Cox* v. *Chamberlain*, 4 Ves. 631; *Maundrell* v. *Maundrell*, 7 Ves. 567; *Ray* v. *Pung*, 5 B. & A. 561; *Doe* v. *Jones*, 10 B. & C. 459; *Skeeles* v. *Shearley*, 8 Sim. 153; 3 Myl. & Craig, 112; *Taylor* v. *Stibbert*, 2 Ves. 437; *White* v. *McPheeters*, 75 Mo. 286. (3.) The alleged appointment to Corwith, being by way of mortgage, could, as against creditors, operate only *pro tanto*, if at all. *Skeeles* v. *Shearley*, 3 Myl. & Craig, 112; *White* v. *McPheeters*, 75 Mo. 286; *Jones* v. *Clifton*, 101 U. S. 225.—III. The power reserved to Forsythe gave him the equitable fee on which a lien was created by the judgment. The Illinois statute, in force now, and at the date of the deed in trust to Arthur, and also at time of the rendition of judgment, regarding the force and effect of English common law and statutes, is as follows: Sec. 1. "The common law of England, so far as the same is applicable and of a general nature, and all statutes or acts of the British Parliament made in aid of, and to supply the defects of the common law, prior to the fourth year of James the first, excepting the second section of the sixth chapter of the forty-third Elizabeth, the eighth chapter of thirteenth Elizabeth, and ninth chapter of thirty-seventh Henry Eighth, and which are of a general nature, and not local to that kingdom, shall be the rule of decision, and shall be considered as of full force

until repealed by legislative authority." *Johnson* v. *Cushing*, 15 N. H. 298; *Lassells* v. *Cornwallis*, 2 Vern. 465; *Holmes* v. *Coghill*, 12 Ves. 265; *Tarbuck* v. *Marbury*, 2 Vern. 510; *Smith* v. *Hurst*, 10 Hare, 30.—IV. The judgment was a lien on Forsythe's estate in reversion, which, on the revocation of the trusts declared in the deed to Arthur, became absolute. *Williams* v. *Amory*, 14 Mass. 20; *Kelley* v. *Morgan*, 3 Yerg. 437; *Lockwood* v. *Nye*, 2 Swan, 515; *Wiley* v. *Bridgman*, 1 Head, 68; *Rickey* v. *Hilman*, 2 Halst. 180; *Burton* v. *Smith*, 13 Pet. 464; *Jacobs* v. *Ware*, 3 Jacobs, 212; *Smith* v. *Angell*, 2 Ld. Raym. 783; *Barlow* v. *Salter*, 17 Ves. 479; *Conklin* v. *Conklin*, 3 Sandf. Ch. 64; *Anderson* v. *Jackson*, 16 Johns. 382.—V. Cochrane was not entitled to protection as a bona fide purchaser. *Gibson* v. *Jones*, 5 Leigh, 370; *Peck* v. *Peck*, 9 Yerg. 301; *Boone* v. *Childs et al.*, 10 Pet. 177.

*Mr. George W. Smith (Mr. Edwin F. Bayley* was with him) for appellees.

MR. JUSTICE MATTHEWS delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

It is manifest that it is vital to the appellants' case, that they should maintain and establish a judgment lien upon the estate of Robert Forsythe, in the premises in controversy, at the date of the recovery of the judgment in 1866; because the discharge in bankruptcy of Forsythe, in 1868, released him from all personal liability on account of the judgment, so that the subsequent levy of an execution in 1870 could have no effect except to enforce a lien subsisting at the time of the adjudication in bankruptcy.

It is accordingly contended on behalf of the complainants, that their judgment took effect at its rendition as a lien upon an equitable estate for life, reserved to Robert Forsythe by the terms of the deed of trust to Arthur, which was not and could not be displaced by the appointment by virtue of which the conveyance was made by Arthur, the trustee, to Corwith; that the power of appointment secured to Forsythe and wife operated to subject the entire estate, which could be disposed

of under that power, and which was the fee simple, to the claims of creditors reduced to judgment; and that Robert Forsythe had an equitable reversion in fee in the trust estate by reason of the failure of the ultimate limitations alleged to be void for remoteness, as they were to take effect, according to the terms of the trust, only after an indefinite failure of issue, which reversion in fee was subject to the lien of judgments against him.

The statute of Illinois in force at the time and governing the case was Rev. Stat. 1845, ch. 57, § 1, which, after providing that judgments should be a lien on the real estate of the judgment debtor, provided as follows: "The term 'real estate' in this section shall be construed to include all interest of the defendant or any person to his use, held or claimed by virtue of any deed, bond, covenant or otherwise, for a conveyance or as mortgagee or mortgagor of lands in fee, for life or for years."

Except so far as modified by this act, the common law on the same subject was in force in Illinois by express adoption. Rev. Stat. 1845, ch. 62, § 1.

In *Spindle* v. *Shreve*, 111 U. S. 542–548, it was stated to be the law in Illinois that where the legal title to lands is in trustees, for the purpose of serving the requirements of an active trust, the judgment creditor had no lien and could acquire none at law, but could obtain one only by filing a bill in equity for that purpose, according to the provisions of § 49 of the Chancery Practice Act of that State. Rev. Stat. 1845, p. 97. It was otherwise if the trust was merely passive, such as those described in the section defining real estate as subject to the lien of judgments, already quoted. *Miller* v. *Davidson*, 8 Ill. 518; *Baker* v. *Copenbarger*, 15 Ill. 103; *Thomas* v. *Eckard*, 88 Ill. 593.

The rule at common law and the corresponding jurisdiction of chancery as to equitable estates are fully explained in *Morsell* v. *First National Bank*, 91 U. S. 357; *Lessee of Smith* v. *McCann*, 24 How. 398; *Freedman's Savings and Trust Co.* v. *Earle*, 110 U. S. 710.

In the present instance the trust was an active one, not

merely passive. At no time during the lifetime of his wife could Robert Forsythe call for, or compel from the trustee, a conveyance of the legal title. On the contrary, the trustee was required by the terms of the trust, subject to the power of appointment, to retain the legal title in himself, and to permit Mrs. Forsythe to use and occupy the property, and to enjoy and receive the rents and profits thereof during her life and to her own use; language which, if it cannot be properly construed to devote it to her separate use, all the more required the protection secured to her actual right by the legal title being vested in a trustee. The estate of Robert Forsythe, therefore, under the trust, whether for life or in fee, whether vested or contingent, was equitable merely, and of that nature which could not be subjected to sale for payment of his debts except by the aid of a court of equity. In such cases no lien arises by operation of law from the judgment, but only on the filing of the bill.

On the contrary supposition, that the estate of Robert Forsythe, under the deed of trust to Arthur, was subject at law to the lien of the appellants' judgment, their title still must fail. Prior to the enactment of 1 and 2 Vic., ch. 110, it was settled in England that at law a judgment against the party having a power of appointment, with the estate vested in him until and in default of appointment, was defeated by the subsequent execution of the power in favor of a mortgagee. *Doe* v. *Jones*, 10 B. & C. 459 ; *Tunstall* v. *Trappes*, 3 Sim. 286, 300. And it was held to be immaterial that the purchaser had notice of the judgment, *Eaton* v. *Sanxter*, 6 Sim. 517 ; or that a portion of the purchase money was set aside as an indemnity against it, *Skeeles* v. *Shearly*, 8 Sim. 153 ; *S. C.* on appeal, 3 Myl. & Cr. 112. In that case, Sir John Leach, the vice-chancellor, decided that the effect of the transmission of the estate by appointment was, that the appointee takes it in the same manner as if it had been limited to him by the deed under which the appointor takes in default of appointment, and, consequently, free and disconnected from any interest that the appointor had in the tenements in default of appointment; that, as the appointee is in no sense the assignee of the appointor,

he cannot be affected by judgments which affect only the estate and interest of the appointor, and, that being so, the circumstance of his having notice of such judgments is immaterial.

The statute of 1 and 2 Vict., c. 110, altered the law in this respect, by making judgments an actual charge on the debtor's property, where he has, at the time the judgment is entered up or at any time afterwards, any disposing power over it, which he might, without the assent of any other person, exercise for his own benefit; so that it would continue to bind the property, notwithstanding any appointment. 2 Sugden on Powers, 7th Lond. Ed. 33; Burton on Real Property, 8th Lond. Ed. 283; *Hotham* v. *Somerville*, 9 Beav. 63.

In Illinois the definition of that real estate which is made subject at law to the lien of judgments, was enlarged by the act of July 1, 1872, Hurd's Rev. Stat. 1882, p. 676, so as to include "all legal and equitable rights and interests therein and thereto;" but the rights of the parties in this suit are not affected by it, and must be governed by the principles of the common law in force when they became fixed.

It is indeed a rule well established in England, and recognized in this country, that where a person has a general power of appointment, either by deed or by will, and executes this power, the property appointed is deemed, in equity, part of his assets, and subject to the demands of his creditors in preference to the claims of his voluntary appointees or legatees. This rule is stated by Mr. Justice Gray in *Clapp* v. *Ingraham*, 126 Mass. 200, to have had its origin, perhaps, in a decree of Lord Somers, affirmed by the House of Lords, in a case in which the person executing the power had, in effect, reserved the power to himself in granting away the estate. *Thompson* v. *Towne*, Prec. Ch. 52; *S. C.* 2 Vern. 319. But it was frequently afterwards applied to cases of the execution of a general power of appointment by will, of property of which the donee had never any ownership or control during his life. *In re Harvey's Estate*, L. R. 13 Ch. Div. 216. That doctrine, however, has no application in the present case for several reasons. The appellants did not seek such relief in equity as against the

estate created by the exercise of the power of appointment by Robert Forsythe, but claimed a lien at law upon the antecedent estate, which that exercise of the power had displaced and defeated. At the time when that might have been done, their judgment had ceased to be a debt against him by reason of his discharge in bankruptcy, and the appointees, Corwith and Cochrane, were not volunteers but purchasers for value.

It is further said, however, that the bankruptcy itself cut off the power of appointment in Forsythe. If so, it passed to the assignee in bankruptcy for the benefit of the estate and its general creditors; was exercised by the sale at which Wallace became the purchaser, and vested in him a complete title by virtue of the appointment, displacing and defeating the limitations under the original deed of trust to Arthur; and then passed to the appellees by virtue of the conveyance from Wallace to Scoville. But it was held in *Jones* v. *Clifton*, 101 U. S. 225, that such a power of appointment does not pass to an assignee in bankruptcy of the person in whom the power resides.

The case of *White* v. *McPheeters*, 75 Missouri, 286, cited and relied on by counsel for appellants, does not decide the only question involved here. That case arose under the Missouri statute, which appears to be broader than that of Illinois in its definition of real estate subject to seizure and sale on executions at law; and was, in fact, a proceeding in equity by a creditor's bill to subject the estate, which was subject to the power of appointment and had been conveyed to a volunteer in pursuance thereof, to the satisfaction of judgments.

On the whole case, we are of opinion that the decree of the Circuit Court was correct, and it is accordingly        *Affirmed.*