(Decided June 28th, 1898).

---

## JOHN B. SCOTT ET AL. *vs.* THOMAS T. KEANE.

*Fraudulent Conveyances—Rights of Subsequent Creditors—Voluntary Settlement of Property Reserving Control to Settlor.*

A voluntary deed may be avoided by subsequent creditors of the grantor in some cases where no actual fraud is proved to have existed, but where the provisions of the deed itself are fraudulent in law.

When the owner of property makes a voluntary settlement of the same, reserving a life interest to himself with remainder to others, but it is also provided that he may revoke the settlement by a sale of the property for his own benefit, or by devise, such settlement is void as against subsequent creditors, for it leaves the property under the control of the settlor.

S., the owner of property, conveyed the same to a third party, who immediately reconveyed it to the grantor in trust for S. for life to retain possession and receive the rents, etc., without impeachment of waste,

and after his death for the benefit of his daughters. The deed further provided that S. should have power to mortgage, lease or sell the land or any part thereof, without any obligation on the part of the purchasers to see to the application of the purchase money, and that he should also have power to devise the land by last will. *Held*, that this deed was void as to subsequent creditors of S. whether they had notice of the same or not.

Appeal from a decree of the Circuit Court for Montgomery County (LYNCH and HENDERSON, JJ.), vacating the deed mentioned in this case.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER,BRISCOE, PAGE, ROBERTS and BOYD, JJ. (April 14, 1898).

*Arthur W. Machen* and *Thomas Anderson* (with whom was *W. Veirs Bouic, Jr.*, on the brief ), for the appellants.

1. That the trust deed, as a settlement, and irrespective of possible attack by creditors, is perfectly valid, there can be no question. It was competent to the grantor, being then the absolute owner of the property, to settle it in this manner. If, without exercising either of the special powers given to him in it, he had died, at any time during the first five years after the making of the settlement, the fee would certainly have passed to Mary E. and Margaret A. Scott, by virtue of the limitation in their favor. The conveyance was, as a conveyance, good and operative according to its tenor. It stands so to-day, unless the effect of the *Statute 13 Elizabeth*, ch. 5, is to impeach it.

2. The circumstance that the settlement was *voluntary*, did not affect its validity, the grantor being at the time free from debt, besides being possessed otherwise of considerable property.

3. Anyone who subsequently becomes a creditor of a grantor whose voluntary conveyance has been duly recorded, cannot impeach it, except on the ground of *actual fraud*, and by proof of a purpose on his part thereby to cheat, hinder or defraud some person in particular or subsequent creditors

in general. *Stat. 13 Eliz.* chapter 5. Preamble and enacting (2nd) section ; *Alex. Brit. Stat.* 378. " Persons not creditors at the time of a conveyance cannot impeach it for fraud in law." *Ward* v. *Hollins*, 14 Md. 167 ; *Kane* v. *Roberts*, 40 Md. 594. The intent to defraud subsequent creditors will not be presumed, but must be proved. *Matthai & Ingram* v. *Heather*, 57 Md. 483. " Here, as in other cases where fraud is charged, the fraudulent purpose will not be presumed, but must be *proved*. The *onus* rests on the parties assailing the deed to establish the fraudulent intent by satisfactory proof."

4. Recording is equivalent to actual notice. This is a firmly settled rule in this State as to cases under the *Statute of 13 Eliz.*, chapter 5. (As it is also as to cases under *Statute 27 Eliz.*, chapter 4). *Williams* v. *Banks*, 11 Md. 198 ; *Mayor and C. C.* v. *Williams*, 6 Md. 235 ; *Cooke* v. *Kell*, 13 Md. 490–491. A deed fraudulent in fact—made with intent to cheat persons who may be induced subsequently to become creditors—cannot be made operative by registration ; for the reason that it *is* thus *fraudulent in fact*. (*Moore* v. *Blondheim*, 19 Md. 172). Upon the same principle, a deed which is *not* fraudulent in intent, and is made effective by registration, which is notice to all the world of its existence and tenor, is impregnable as regards such future creditors. So complete is the notice given by registration acts that it was even contended at one time that no other form of notice, or what is commonly described as *actual* notice, would take its place. See *Hudson* v. *Warner*, 2 H. & G. 430–431.

5. We respectfully submit that the view taken by the learned Judges of the Circuit Court and made the ground of the decree appealed from has no support in principle or authority. That view is that, even where it is conceded that there was no actual fraud attending the execution of the deed, where the grantor, at the time, was perfectly solvent and free from debt, where the deed was put on record immediately, and the continued possession of the grantors

has been in full accord with its provisions, where the limitations of the instrument are plain and explicit, and there is no secret trust behind them—where, in short, the transaction was perfectly free from fraud in fact, and the recorded instrument gives full notice to all the world of the condition of the title—the deed, if it contains *powers* such as are found in this deed, must, notwithstanding the absence of fraud in fact, be held to be constructively fraudulent as against persons who, with this notice, have become creditors of the grantor or settlor.

The second branch of the proposition quoted in the opinion of the Circuit Court from the case of *Lawson* v. *Funk,* in 108 Illinois, 502, 507, that " there are two distinct grounds upon which conveyances and other contracts will be deemed fraudulent as against creditors : First, such as are entered into with a fraudulent intent ; and second, such as from the terms of the agreement, or the nature of the transaction itself, are deemed so, as a mere inference of law without regard to the motives or actual intentions of the contracting parties," has no application, under the settled law of this State, to a case such as this of a settlement made *bona fide,* and put on record, and only assailed long after its execution, by a person, who has *subsequently* given credit to the settlor. The first branch of the proposition is excluded from the present case by the fact that there is *no fraudulent intent.* Undoubtedly, where fraudulent purpose existed, and is proved, no deed, however solemn, no registration, however patent, will avail in support of such fraudulent scheme. But if there is no fraud in fact, an innocent and valid conveyance, duly registered, cannot, in favor of a subsequent creditor of the grantor, be treated as fraudulent. There is no room for the doctrine of constructive fraud in such a case. We suppose it cannot be doubted that *actual notice* to the intending subsequent creditor will debar him from assailing the conveyance. (52 Barb. 26.) The learned Judges of the Court below seem not seriously to question this proposition, although the opinion refrains

from admitting it.   But the *recording* of a deed of land is equivalent to actual notice, as regards subsequent creditors. *Williams* v. *Banks*, 11 Md. 198.   In relation to persons not creditors at the time of the conveyance, there is no such thing as fraud in law.   *Ward* v. *Hollins*, 14 Md. 167; *Matthai, &c.*, v. *Heather*, 57 Md. 483 ; *Baker* v. *Gilman*, 52 Barb. 26, 39.

*Lawton* v. *Funk*, 108 Illinois, 502, the case from the opinion in which the above passage has been excerpted by the learned Judges of the lower Court, and inserted in their opinion as a rule for their own determination in this case, was the case of an attack made by an *existing* creditor. And the same observation is applicable to the line of cases referred to by the Illinois Court.   It is manifest that that Court, in laying down their canon of decision, had in contemplation only the case of conveyances affected by a present indebtedness of the grantor ; " creditors " there means *existing creditors*, not persons who may become creditors subsequently.   The early English cases, turning on the question of express notice and the effect of continued possession of the grantor, have no applicability, as Judges Henderson and Lynch justly recognize, to our circumstances ; where registration is expected of all conveyances, and every person feeling interested in the question of the ownership of any land is bound to have recourse to the record.   In *Brinton Hook*, 3 Md. Ch. 480, the Chancellor seems not to have given the effect to this distinction which he probably would have felt bound to give had the opinions in *Williams* v. *Banks*, 11 Md. 198 ; *Mayor and C. C.* v. *Williams*, 6 Md. 235 ; *Cooke* v. *Kell*, 13 Md. 469, and *Ward* v. *Hollins*, 14 Md. 167 (to say nothing of other modern decisions of the Court of Appeals), been then pronounced.   If it were necessary to look outside of the current of Maryland decisions, and the plain language of the *Statute of 13 Elizabeth*, the object of which by its terms is " for the avoiding and abolishing of *feigned, covinous* and *fraudulent* " conveyances, it would not be difficult to find

support for our contention in decisions elsewhere. An illustration may be seen in *Johnson* v. *Zane*, 11 Grattan, ' 552, 560, where it was declared that a settlement cannot be impeached on the bare ground of being voluntary, if there be no actual fraudulent intent at the time it was made; to let in such a creditor it must be shown that there was a *mala fides* or fraud in fact in the transaction. And in that case, P. Z. having by one deed assigned property for the payment of his existing debts, and simultaneously, by another, conveyed all the residue of his property in trust for himself and his wife, the last-mentioned deed was sustained against subsequent creditors. In *Hunter* v. *Waite*, 3 Grat. 35, BALDWIN, J., quoting the words of the *Statute of 13th Elizabeth*, said: "This is plain language, and is clearly directed against conveyances or gifts made with a fraudulent or covinous intent, and *against none other.*" See also *Walker* v. *Bollman*, 22 So. Car. 528, 529; *Kirksey* v. *Snedecor*, 60 Ala. 192; *Graham* v. *La Crosse, &c., R. R. Co.*, 102 U. S. 148; *Knight* v. *Brown*, 30 L. J. Ch. 649.

*Robert B. Peter* and *Arthur Peter* (with whom was *A. A. Birney* on the brief), for the appellee, cited: *Brinton* v. *Hook*, 3 Md. Ch. 362; *Stileman* v. *Ashdown*, 2 Atkyns, 477; *Mackay* v. *Douglas*, L. R. 14 Eq. Cas.; *Coolidge* v. *Melvin*, 42 N. H. 510; *Ford* v. *Caldwell*, 3 Hill (S. C.) 248; *In re Pearson*, L. R. 3 Ch. Div. 807; *Hunter* v. *Waite*, 3 Gratt. 26; *Tarbuck* v. *Marbury*, 2 Vernon, 510; *Mackason's Appeal*, 42 Pa. St. 330; *Whedbee* v. *Stewart*, 40 Md. 423; *May on Fraud. Convey.* 76; *Atherley on Marriage Settlements*, 212, 220, 259; *Folsom* v. *Fertilizer Co.*, 85 Md. 70.

BOYD, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for Montgomery County setting aside a deed from John B. Scott to John D. Coughlan, and one from Coughlan to Scott, conveying certain real estate in that county. They were executed on the 17th and 18th days of October, 1888, respectively, and

filed for record the 19th of that month. It is admitted that Coughlan had no beneficial interest in the property; that the deed was made to him for a nominal consideration, which was not paid, with the understanding that it was to be reconveyed to Scott, subject to the uses and trusts here-inafter mentioned. In October, 1893, Scott, who was in the hotel business in Washington City, commenced to deal with the appellee, who was in the meat business, and on the 24th of April, 1896, owed him an open account and two promissory notes, amounting in all to nearly two thousand dollars. On the last-named day Scott failed, owing a large amount of money, and made an assignment for the benefit of his creditors. No bond having been given in this State as required by the statute, the appellee issued attachments, levied upon the property included in these deeds and obtained judgments of condemnation thereon. After thus acquiring a lien on Scott's interest in the property this bill was filed, in which it was charged that the conveyances were made with the intention on the part of Scott of becoming subsequently indebted, and with the intent to hinder, delay and defraud anyone to whom he might thus become subsequently indebted. It is also alleged that the provision in the deed for the daughters is and was intended to be a mere subterfuge and never was intended to create any interest in them. Most of the facts alleged in the bill are admitted in the answer, but it is dis-tinctly denied that there was any intention to hinder, delay or defraud subsequent creditors or that Scott had any future indebtedness in contemplation. It is claimed that he was then in prosperous circumstances and not in contemplation of insolvency, and that the deed was made to create a life estate in himself with remainder to his two daughters, in accordance with his purpose when he purchased the prop-erty some months before these deeds were made.

There was no evidence taken, but the case was submitted on the bill, exhibits and answers, together with an agree-ment that Scott was a widower when the deeds were made,

having no children excepting the two daughters mentioned in the deed, but he shortly afterwards married again and had one child by that marriage. The allegations of fraud be- · ing denied in the answer the determination of the case must depend upon the construction and effect of the provisions in the deed to Scott, which are as follows :

" In trust for the said party of the second part (Scott) during his life, to retain possession of said parcel of land and premises without impeachment for waste and to receive the rents, issues and profits thereof for his own use and benefit, and from and after his death to hold said parcel of land and premises, unless the same shall be disposed of as hereinafter authorized, for the use and benefit of Mary Elizabeth Scott and Margaret Adelia Scott, daughters of said party of the second part, their heirs and assigns forever, as tenants in common.

" And upon this further trust that said party of the second part shall have full power and authority to lease or sell said parcel of land or any part thereof from time to time, and to convey the same in fee-simple, absolute or by way of mortgage deed of trust or otherwise, and upon such terms and for such conditions as the said party of the second part may deem fit, and without obligation on the part of the purchaser to see to the application of the purchase money, or the person lending money to see to the application thereof, and to devise and dispose of said parcel of land and premises by a last will and testament, executed according to law."

There is no doubt about the right of subsequent creditors to have a voluntary deed set aside if made with the intention and design of defrauding those who should thereafter become creditors, although the grantor be solvent or even free from debt at the time the deed is executed, but the mere fact that the deed was voluntary does not give them the right to do so, but there must be something to convince the Court that there was some fraudulent intent on the part of the grantor before it can be set aside on the ground of fraud. That fraudulent intent may, however, be

ascertained in different ways. Sometimes the parties make such statements as convict them of fraud, but those cases are rare, because persons having fraudulent purposes in view are not apt to give expression to them in the presence of those likely to repeat them. The terms and provisions found in the conveyance itself oftentimes furnish strong evidence of fraud, and amongst such cases may be those where the grantor has reserved for himself control over his property, whilst nominally transferring it to a third person, or for his benefit, with a pretended purpose of making a settlement on him.

It is contended on the part of the appellants that there is no such thing as *fraud in law* as affecting subsequent creditors, and that inasmuch as no actual fraud is proven, the bill should be dismissed. They rely on the cases of *Ward* v. *Hollins*, 14 Md. 158 ; *Kane* v. *Roberts*, 40 Md. 590, and *Matthai* v. *Heather*, 57 Md. 483, as decisive of the question. But those cases do not decide that there may not be on the face of the deed itself such provisions as will in contemplation of law make it invalid, and there was nothing in any of those cases to raise that question, as the instruments attacked were of the ordinary and usual forms. In the case of *Kane* v. *Roberts* the Court said the only question presented by the appeal was " whether a deed, that is fraudulent and void against the grantor's subsisting creditors, is also void against subsequent creditors *when there is nothing in the deed itself* and no evidence offered tending to prove that any fraud was intended against the latter"—thus strongly implying that the deed itself may be evidence of fraud against subsequent creditors, and there is no decision in this State which announces a contrary doctrine. It would be singular if there was, for we cannot understand the necessity for other evidence of fraud if the deed itself contains such provisions in it as the law declares to be fraudulent.

Scott not only undertook to reserve to himself the right to retain possession of the property during his life and to

receive all the rents and benefits therefrom, without impeach‑ ment of waste, but the only interest he pretended to give others is that after his death *he* should hold it for the use and benefit of his two daughters "*unless the same shall be disposed of as hereinafter authorized.*" Without stopping to consider the meaning or effect of his *making himself* the trustee for his daughters *after his death*, in order to see what disposition of the property was "hereinafter author‑ ized," we have only to refer to the subsequent provisions of the trust above quoted to ascertain that he is authorized to do what he pleases with it—sell, lease, mortgage or devise it. It is equivalent to saying that he can dispose of it as may suit his pleasure, but if he does not dispose of all of it then his two daughters may have what is left, and notwith‑ standing the vast powers reserved to himself, any creditors he may have can be effectually shut out, excepting to the extent of his life-estate. The effect of the deed is that he reserved the same rights that a fee-simple owner would have in the property, but attempts to place the remainder, after his life-estate, beyond the reach of his creditors, unless he chooses to exercise the powers therein reserved to him‑ self. It may be conceded that the life-estate thus carved out is liable for his debts and that a creditor, who has ac‑ quired a lien against it, cannot be deprived of that by the subsequent exercise of the power, for although there are cases which hold that a judgment obtained against one hav‑ ing a limited estate, with a power of further disposition of the property, would be subordinate to and liable to be de‑ feated by an exercise of that power (such as *Brandies* v. *Cochrane*, 112 U. S. 344 ; *Leggett* v. *Doremus*, 25 N. J. Eq. 122 ; *Doe* v. *Jones*, 10 B. & C. 1·59, and others), such would not be the effect in a case such as this, where the life-estate and the powers are reserved by the party himself for his own benefit. It may also be assumed that notwithstanding the power of disposition reserved, Scott would only take a life-estate, for when property is given *expressly for life*, with a power of disposition superadded, the first taker only has

a life-estate, with the power annexed. The distinction be-
tween such a gift and one to a person *generally* or *indefi-
nitely* with power of disposition (a distinction that is said to
be slight but perfectly well established) is recognized in
*Benesch* v. *Clark*, 49 Md. 497 ; *Foos* v. *Scarf*, 55 Md. 301,
and other cases in this State, and we therefore assume that
unless the powers are executed, if the deed is valid, Scott
only has a life-estate and that estate is liable for his debts.
But a life-estate in property is but of little value as com-
pared with the absolute ownership in fee, and even that
could have been extinguished before any liens attached by
the exercise of the power—certainly if conveyed to *bona fide*
purchasers for value. But this is not a deed by which the
owner of the property, after reserving a life-estate, conveyed
a vested or definite remainder to others, for we have seen
that the remainder depended entirely upon the failure of
Scott to exercise the powers retained by him. It is clearly
and distinctively a conveyance for his own benefit, and no
one has any interest in it excepting what he chooses to leave
for them during his life or by his last will and testament.
To use a homely but expressive phrase, it is at best " a
gift with a string to it." It is true that in the exercise of
the powers in favor of a mere volunteer the property might
be subjected to his debts, and it is also true that if he sold
it to a *bona fide* purchaser, for value, the proceeds would be
liable for his debts if they could be reached, but what pros-
pect would there be of success on the part of creditors in
an attempt to reach them if he saw proper to evade them ?
Creditors could acquire no lien or interest in the power, "for
a donee of the power has not, strictly speaking, any interest,
right or title in or to the property. Where the power is for
his own benefit, he has the means of acquiring a right, title
and interest," 18 *Ency. of Law*, 916, but there is no way to
compel him to exercise it so his creditors can get the benefit
of it. Some Courts of Equity hold that when one has a gen-
eral power of appointment and he actually exercises it, by
deed or will, the property appointed should form a part of his

assets so as to be subject to the demands of his creditors, in preference to the claims of his legatees or appointees, "but in order to raise this equity the power must be actually executed, for equity never aids the non-execution of a power." 2 *Sug. on Powers*, 27. He has therefore attempted to place this property in such position as to give him absolute control over it, so long as he can evade his creditors, but the very moment they appear he can simply fold his hands and say to them that they must either accept such terms as he chooses to dictate or let the property go to his daughters, free from their claims. To sanction such methods would be establishing a most dangerous means of enabling a debtor to force his creditors to accept his own terms. As against existing creditors no effort of a debtor to hinder or delay his creditors is more severely condemned by law than an attempt to place his property where he can enjoy it, but require his creditors to await his pleasure for the payment of their claims out of it; *Price* v. *Pitzer*, 44 Md. 521 ; and although the distinction between the rights of existing and subsequent creditors is marked and well defined, it should be equally against the policy of the law to permit a debtor to hold such powers over property as are attempted by this deed, and yet not make it liable to his creditors, unless he sees proper to do some act that will enable them to reach it, which he may and probably will never do. Those giving him credit, even with notice, actual or constructive, of such a deed, might assume that an honest man would exercise the powers in order to pay his just debts, but we find from the answer that Scott was not only not doing that, but is asserting that he only has a life-interest and that the remainder belongs absolutely to his daughters—thus not only not making any effort for his creditors, but placing a construction on the deed which if sustained would forever bar them from any interest beyond his life-estate. Then in answer to the reasons assigned in the bill for the execution of the deed, he alleges that the powers were only given to facilitate the disposition of the property, and reinvest the proceeds when-

ever the beneficiaries desired to do so, the daughters then being under age and incapable in law of conveying real estate, although it is perfectly manifest that was not the true reason, for he had not only reserved the power of disposing of the property *for his own benefit,* but even of devising it, which of course could not be for the purpose of making new investments for the benefit of his daughters. It was suggested at the argument that a Court of Equity could have a supervision over the trust for the benefit of the re-maindermen, but 'the simple answer to that is that there would be no trust to supervise if he chose to dispose of the property, as their interest depends entirely upon the non-execution of the powers.

Thus we find an owner of property undertaking to carve out a life-estate for himself, with the superadded power of disposing of it (even including that life-estate if no intervening liens prevent), " upon such terms and for such conditions as he may deem fit and without obligation on the part of the purchaser to see to the application of the purchase money " and, although still having that power when the debts of the appellee are incurred, asserting that he has by his own act so arranged the title to the property that the appellee can only sell, for the payment of his claim, a life-estate, the duration of which is necessarily uncertain and hence of but little value. This he does notwithstanding his power over it and the further fact that he has, since the deed was made, paid a mortgage on the property for six thousand dollars, and made large improvements. Must such a deed be held valid against those who have become creditors, whilst the former owner still retains such control and power over the property ? We think the case of *Brinton* v. *Hook,* 3 Md. Chancery, 477, is a conclusive answer in the negative. It is true that case was not decided by the Court of Appeals, but it was cited with approval by this Court as late as 85 Md. 52, in the case of *Folsom & Co.* v. *Detrick Fertilizer Company,* where the rights of subsequent creditors were involved. The trusts of that deed were :

" 1st, for the use of the grantor and his wife during their joint lives, and the life of the survivor, with power to them jointly to dispose absolutely of the property during their joint lives ; 2ndly, in case the grantor should survive his wife in trust to permit him to dispose of the property at his pleasure ; and 3rdly, whether he survives her or not in trust for such person or persons as he may appoint by his will, and in case of his failure, to make such testamentary appointment, then in trust for his heirs at law. "

The Chancellor said : " It appears to me that such a deed is clearly fraudulent and void, both with reference to pre-existing and subsequent creditors. It cannot be regarded as a voluntary conveyance, made by a husband in favor of his wife, which, if *bona fide*, will be permitted to stand as against subsequent creditors, but it is a conveyance made by a party for his own benefit and although his wife was designed to participate with him to some extent, in the enjoyment of the property, the beneficial interest of the husband greatly preponderates over hers. It is emphatically a deed for the use of the grantor which renders it void against all creditors, existing or subsequent. "

There is no substantial difference, as affecting the question of law involved, between the facts of that case and the one before us. In *Bump on Frandulent Conveyances*, 330, it is said that " a conveyance to the use of the grantor during his life, with power to dispose of the property by will or direct its course after his death, is a conveyance to his use and the property so conveyed is liable to those who deal with him after its execution. A man cannot be the equitable owner of property and still have it exempt from his debts. A power of revocation inserted in a deed will also render the property liable to subsequent creditors." Scott did not undertake to hold simply an equitable interest, exempt from his debts, but he held the legal title with the power of disposing of the property in whole or in part by will, deed, lease or mortgage. Again in *May on Fraudulent Conveyances*, page 77, it is said, " A power of revo-

cation is a strong mark of fraud against future creditors, and will, it is apprehended, always make a settlement void against them, for it virtually leaves the property under the settlor's power, showing that he did not *bona fide* intend to put the property out of his reach, and that it was a contrivance for his own benefit; but actual notice to a creditor before he became so has been held to make a difference in favor of the deed." There is no evidence of any actual notice to Keane, but if there was we cannot see why that should affect his right to have a deed of this character that is fraudulent on its face and contrary to the policy of the law, declared invalid. For, as we have already said, those becoming creditors would have the right to assume that if he is an honest man he would exercise for his creditors the powers reserved which enabled him to dispose of or mortgage the property to pay his just debts, as well as for any other purposes of his own, and they were certainly not required to assume, when he obtained credit from them that he would not be honest in his dealings with them. But in addition to that, if recording the deed gives constructive notice, as it may be admitted it does, is it to be said that it is only notice of the transfer and not of the purposes declared on its face, which the law pronounces fraudulent and hence makes the deed invalid against them? Such a doctrine would have the tendency to make the public records an asylum for fraud instead of means to avoid it, as they are intended to be. If such be the effect of recording a deed, why did not the record of the instruments in *Warner* v. *Rice*, 66 Md. 436, and *Brown* v. *Macgill*, decided at the last January term of this Court, *ante*, p. 161, protect the parties claiming under them? It is true the question involved in those cases was not the same as in this, but those deeds had been recorded and gave notice, as well as this deed does, to subsequent creditors of the interests held by the parties. But the provisions in the deeds did not protect the parties, notwithstanding they had been recorded, because they were contrary to the policy of the law and so

must this deed be declared, because it is an attempt of the owner of property to retain control over it, although nominally settling it on others, and his setting apart a life-estate for himself, which would be liable to creditors, whilst still holding such power over the whole property, cannot satisfy them or the law which should protect them against such schemes and devices, the sanction of which by a Court of Equity must result in the increase of fraud and methods used to take advantage of honest people. Whatever Scott's real motives were, in the execution of these deeds, we must judge of them by the terms of this trust deed, which the law declares fraudulent, and it cannot be upheld, but both deeds must be set aside, so far as they interfere with or affect the rights and claims of the appellee. The decree will be affirmed.

> *Decree affirmed, costs to be paid by the appellants.*

(Decided June 28th, 1898).