MERCANTILE TRUST COMPANY *v.* BERGDORF & GOODMAN COMPANY.

HELEN WELLS *v.* BERGDORF & GOODMAN COMPANY.

BULKELY L. WELLS, JR., *v.* BERGDORF & GOODMAN COMPANY.

[Nos. 31-33, April Term, 1934.]

*Decided June 12th, 1934.*

The causes were argued before BOND, C. J., URNER, AD-KINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Frank B, Ober,* with whom were *Janney, Ober & Williams* on the brief, for the Mercantile Trust Company, appellant.

*H. Warren Buckler, Jr.,* for Helen Bennett Wells, appellant.

*Carlyle Barton,* for Bulkeley L. Wells, Jr., appellant.

*Charles C. G. Evans,* with whom were *Parker, Carey & Doub* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the court.

The question on this appeal is the validity as to future creditors of a deed of trust made by the judgment debtor for her, the settlor's, benefit. The chancellor decreed the sale of sufficient securities of the corpus to satisfy the judgment, and the settlor, trustee, and infant remainderman appealed.

On the 30th day of January, 1923, Helen H. Bennett, who was then twenty-four years of age, and unmarried, made a deed of trust to the Continental Trust Company and Thomas E. Cottman of stocks, bonds, and other personal property, amounting, according to an appraisal made in 1931, to nearly $400,000, "in Trust to hold and manage the same and to pay over the net income therefrom quarterly unto the said Helen H. Bennett during her natural life, and from and immediately after the death of the said Helen H. Bennett, to assign, transfer, pay over and convey the principal of said trust fund, together with all accrued and unexpended income therefrom, to such persons in such shares and proportions as, of such estates and upon such terms and conditions, the said

Helen H. Bennett may by her last will and testament direct or appoint; and in default of such direction or appointment, then said Trustees shall transfer and deliver said trust estate to her lawful issue living at the time of her death *per stirpes* and not *per capita,* free and discharged from this trust. If the said Helen H. Bennett should die without leaving issue surviving her, and without exercising this power of appointment, said Trustees shall transfer and deliver said trust estate to such persons as may be her next of kin, if personal property, or to her heirs at law, if real property, under the then existing laws of Maryland."

The Continental Trust Company resigned and was discharged as trustee, and the Mercantile Trust Company was appointed in its stead, and Thomas E. Cottman afterwards died, and the Mercantile Trust Company, since his death, has administered the trust as sole surviving trustee.

Helen H. Bennett reserved the right to revoke the trust to the extent of cash or securities of the market value of $50,000, and this right has been exercised by her, so that the corpus of the estate now in the hands of the trustee is controlled by the power and disposition heretofore quoted. In June, 1923, the settlor was married to Bulkeley L. Wells, and they have a son, Bulkeley L. Wells, Jr., for whom Charles A. McNabb appears as guardian *ad litem.* She also has two sisters, Margaret D. Cottman and Elizabeth C. Cunningham, and all are parties defendant to the petition of the judgment creditor, Bergdorf & Goodman Company, the appellee. Mrs. Wells became involved to a stock brokerage house in New York, and in 1931 borrowed from the Mercantile Trust Company, out of the corpus of the trust estate created by her, $150,000 and gave as additional collateral a life insurance policy for $180,000. The aggregate value of the corpus of the estate, exclusive of her note to the trustee, is now about $90,000, yielding about $5,000 a year, of which $3,400 is being used to pay the premium on the life insurance policy. This was all approved by a decree of the Circuit Court of Baltimore City.

On August 19th, 1932, the appellee, Bergdorf & Goodman Company, procured a judgment in New York against Mrs. Wells for $5,090.18, the balance due to that day on bills contracted from August 3rd, 1929, to June 10th, 1930, amounting to $7,234, and, being unable to collect in New York, it came to Baltimore and filed its petition, wherein it recited the facts of its judgment and the deed of trust made by Mrs. Wells in 1923, and prayed that the deed be declared in fraud of creditors and void; that the Mercantile Trust Company be enjoined from paying out any part of the corpus or income of the trust to any one until the petitioner's rights be determined, and for general relief, with the result that the chancellor ordered the Mercantile Trust Company to sell and dispose of enough of the corpus of the estate to pay the appellee.

It was agreed in a stipulation between the parties that the deed of trust was not made "in contemplation of incurring any specific indebtedness thereafter, or of obtaining any large amount of credit thereafter, or of engaging in any hazardous business venture," and that the settlor at the time did not convey all of her property to her trustees, she retaining personal property of the value of $45,000; that she was solvent and able to meet all of her obligations as they became due.

In a paper published in the Daily Record of May 9th, 1934, in which the subject is ably discussed and the decisions exhaustively reviewed, the author says a diligent search reveals only sixteen cases which can be said to be directly in point, and two of these are *Brinton v. Hook,* 3 Md. Ch. 477, an authority, but not a precedent, decided in the old Court of Chancery in 1850, the first reported case in this country, and *Scott v. Keane,* 87 Md. 709, 40 A. 1070, and these the appellee contends are decisive of the question here presented, while the appellants contend that they are distinguishable on the facts from the instant case. The appellee, in support of its contention, also strongly relies on the broad statement of the rule contained in *Bump on Fraudulent Conveyances,* 330, where it is said: "A conveyance to the use of the grantor during

his life, with power to dispose of the property by will, or direct its course after his. death, is a conveyance to his use, and the property so conveyed is liable to those who deal with him after its execution," so quoted in *Scott v. Keane*, page 722 of 87 Md., 40 A. 1070, 1073. The appellee cites in its brief *Moore on Fraudulent Conveyances*, 423, where it is said: "A conveyance of property to be held in trust for the benefit of the grantor during his life, with remainder over, with reserved power of appointment or devise or disposition at his death, is fraudulent and void both as to existing and subsequent creditors, and both the principal and income may be subjected to the claims of such creditors," which cites *Brinton v. Hook*, 3 Md. Ch. 477, and *Scott v. Keane*, 87 Md. 709, 40 A. 1070, as authorities to support the text.

The chancellor in *Brinton v. Hook*, *supra*, accurately summarized the provisions of the deed attacked in that case when he said: "The trusts of this deed, are 1st, for the use of the grantor and his wife during their joint lives, and the life of the survivor, with power to them jointly to dispose absolutely of the property during their joint lives; 2dly, in case the grantor should survive his wife in trust, to permit him to dispose of the property at his pleasure; and, 3dly, whether he survives her or not, in trust for such person or persons as he may appoint by his will, and in case of his failure, to make such testamentary appointment, then in trust for his heirs-at-law." And then he goes on to say: "The whole interest, therefore, of the wife, is an interest in common with her husband during their joint lives, or for her own life, in case she should survive him. But no power of disposition is reserved to her independently of her husband, whilst to him after her death, such power in the fullest terms is given, either by deed or will, and in case he fails thus to dispose of the property, it descends to his heirs-at-law. * * * Although his wife was designed to participate with him to some extent, in the enjoyment of the property, the beneficial interest of the husband greatly preponderates over hers. It is emphatically a deed for

the use of the grantor, which renders it void against all creditors, existing or subsequent." While these and other statements in the opinion are as broad as those quoted from the text-writers cited, it will be noted that after the death of the wife the grantor reserved to himself as complete control of the property as he would have had with the original title undisturbed in his own name. After all, the facts are important, and the law only applicable as it fits the facts.

In *Scott v. Keane,* 87 Md. 709, 40 A. 1070, 1071, the grantor, Scott, had conveyed his property for a nominal consideration to Coughlan, who reconveyed it "in trust for the said party of the second part (Scott) during his life, to retain possession of said parcel of land and premises without impeachment for waste, and to receive the rents, issues, and profits thereof for his own use and benefit, and from and after his death to hold said parcel of land and premises, unless the same shall be disposed of as hereinafter authorized, for the use and benefit of Mary Elizabeth Scott and Margaret Adelia Scott, daughters of said party of the second part, their heirs and assigns, forever, as tenants in common. And upon this further trust that said party of the second part shall have full power and authority to lease or sell said parcel of land, or any part thereof, from time to time, and to convey the same in fee simple absolute, or by way of mortgage, deed of trust, or otherwise, and upon such terms, and for such conditions, as the said party of the second part may deem * * * and to devise and dispose of said parcel of land and premises by a last will and testament executed according to law." The difference between the title as Scott then held it and before the conveyance to Coughlan was more apparent than real, and the whole scheme too transparent to deceive any one. In the instant case the only reservations were a life estate and the power of appointment, while in the *Scott* case there was the power to exercise the rights of an owner in the lifetime of the *cestui que trust,* who was the real settlor. He could do as he pleased with the property so held in

trust, but a creditor could do nothing with the deed standing in his way. In both deeds, remainders were created; in both, powers of appointment, but in one only, the Scott deed, were the rights to lease, mortgage, and convey reserved.

In the absence of evidence of a fraudulent intent, it is not disputed, nor could it be, that Mrs. Wells could have made a deed, absolute on its face, to her sisters, who are here the contingent remaindermen under the deed of trust she did make, with the reservation of a life estate to herself. In effect, has she done anything else? She has not, unless the power of appointment by will (not by deed) is the retention by her of an interest in the property assigned and conveyed by her to her trustees. In the opinion in *Scott v. Keane, supra,* this court has practically said that this is the test, and it was very strongly intimated there that, if the only reservation in the settlor had been a power of appointment, the decision would have been the reverse of what it was. It was there said (page 718 of 87 Md., 40 A. 1070, 1071) : "It may be conceded that the life estate thus carved out is liable for his debts, and that a creditor, who has acquired a lien against it, cannot be deprived of that by the subsequent exercise of the power; for although there are cases which hold that a judgment obtained against one having a limited estate, with a power of further disposition of the property, would be subordinate to, and liable to be defeated by, an exercise of that power (such as *Brandies v. Cochrane,* 112 U. S. 344, 5 S. Ct. 194 [28 L. Ed. 760] ; *Leggett v. Doremus,* 25 N. J. Eq. 122; *Doe v. Jones,* 10 Barn. & C. 459; and others), such would not be the effect in a case such as this, where the life estate and the powers are reserved by the party himself for his own benefit. It may also be assumed that, notwithstanding the power of disposition reserved, Scott would only take a life estate; for when property is given expressly for life, with a power of disposition superadded, the first taker only has a life estate, with the power annexed." And again (page 719 of 87 Md., 40 A. 1070, 1072) : "Creditors could acquire no lien or interest in

the power, 'for a donee of the power has not, strictly speaking, any interest, right or title in or to the property. Where the power is for his own benefit, he has the means of acquiring a right, title, and interest, (18 Am. & Eng. Enc. Law, 916) ; but there is no way to compel him to exercise it, so his creditors can get the benefit of it." In the case before us, Mrs. Wells could not exercise the power for her benefit, so that it would not be a matter of choice with her whether she could release the corpus to her creditors or secure it for herself, as Scott could have done.

In the recent case of *Pope v. Safe Deposit & Trust Co.*, 163 Md. 239, 161 A. 404, 406, there were two deeds of trust involved which were in effect, and almost in terms, identical with the one here involved. The question submitted to the court was one of construction of the deeds, in which no creditor was concerned, but was a controversy between the executor of the settlor and his trustee under a power of appointment reserved in the deeds of trust; the executor contending unsuccessfully that the corpus of the trusts so created by deed reverted to the grantor and passed under his will. What was there said could be incorporated in this opinion, as the views of this court on the case now presented as to the effect of such a deed as we have here on the rights of all parties concerned. It was stated in the opinion in the *Pope* case that "the exercise of the power was limited to a will, and therefor could not be by deed," and that "a power retained is, however, not an estate in the subject matter of the power. * * * In no proprietary capacity could he alienate, bargain and sell, bequeath or devise the property which might be appointed. Neither, if there were no fraud associated with the execution of the deed, could this property or estate arising upon the termination of his life be made subject to the claims of the appointor's creditors, whether in bankruptcy, insolvency, or otherwise; nor could it be taken by them in attachment or execution."

As further evidence that there was no retention of ownership or dominion over the property which could be

exercised in the lifetime of the settlor, there was an immediate vesting of the remainder in the next of kin of the settlor, subject to the contingency of children being born to her. And the immediate vesting of the remainder was not affected by the fact that the estate in remainder so held might be defeated by the exercise of the power of appointment. *Pope v. Safe Deposit & Trust Co.,* 163 Md. 239, 247, 161 A. 404; *Myers v. Safe Deposit & Trust Co.,* 73 Md. 445, 21 A. 58; *Miller's Eq. Proc.* 680. Nor is the effect of the deed any the less immediate because children may be born who will take and thus defeat or disappoint those who, but for them, would take in possession what they at the time had only in interest. *Wilson v. Pichon,* 162 Md. 199, 159 A. 766; *Reilly v. Mackenzie,* 151 Md. 216, 134 A. 502; *Lee v. Waltjen,* 141 Md. 458, 119 A. 249; *Lewis v. Payne,* 113 Md. 127, 135, 77 A. 321; *Devecmon v. Shaw,* 70 Md. 219, 16 A. 645; *Boulden v. Dean,* 167 Md. 101, 173 A. 26.

The present vested interest in the remainder of the trust estate is, therefore, in Bulkeley L. Wells, Jr. If he should die without issue before his mother, then the corpus would go to her next of kin, whose remainders are contingent upon the issue of the settlor surviving her, but all might be defeated by the exercise of the power. But, whether the power be exercised or not, those who ultimately take the remainders take under the deed of trust and not through the estate of Helen Bennett Wells. *Pope v. Safe Deposit & Trust Co.,* 163 Md. 239, 247, 161 A. 404. With the ownership of the corpus in the remaindermen, even though the possession may be delayed or defeated by the will of the donor, there being no evidence of fraud in the inception of the trust, and none in the instrument creating it, the corpus cannot be attached to satisfy the creditors of the settlor. It is not disputed that recourse may be had against the income, and, as the remedy for collection of the debt is at law, the decree appealed from will be reversed.

The appellee does not very strongly urge, but suggests, that the deed of trust in this case is void according to the

Statute of 3 Henry VII, c. 4, *Alexander's British Statutes,* 335, which is: "That all Deeds of Gift of Goods and Chattels made or to be made of Trust to the use of that person or persons that made the same deed of gift be void and of none effect." In none of the cases here cited or discussed is there any mention of this act, though we assume the judges who sat in those cases were just as cognizant of its existence as those who participate in this case, and that they, as well as we, did not regard it as applicable to the trusts then and now passed upon, or necessary to a decision of the cases being considered. *Moore on Fraudulent Conveyances,* 417, cited by the appellee, says it "applies only to conveyances primarily and wholly for the use of the grantor,and not to instruments made in good faith for the actual and real use of the grantee, and where the reservations to the grantor are incidental and partial. Its object is to render ineffectual purely nominal transfers of personal estate where the entire use and control are, by a declaration of trust in or out of the instrument, left in him who makes the transfer," which we hold in this case was not done by the settlor.

*Decree reversed, with costs, and bill dismissed.*