FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE v. MABEL L. SCHWAB and GERTRUDE A. SCHWAB, in their own right and as Trustees for ALMA SCHWAB KOMM, ELEANOR SCHWAB GABEL, ALIDA SCHWAB, MABEL L. SCHWAB and GERTRUDE A. SCHWAB.

194 So. 307
En Banc
Opinion Filed February 16, 1940
Rehearing Denied March 15, 1940

*Leland Hyzer,* for Appellant;

*Van C. Swearingen,* for Appellees.

BUFORD, J.—It appears from the record here that one Rudolph J. Schwab on May 14, 1931, executed a guaranty contract to the First Wisconsin National Bank of Milwaukee, guaranteeing the payment to the Bank of all loans, interest, demands and liabilities of every kind and description then owing, or which might thereafter become due or owing by R. J. Schwab & Sons Co. to the Bank. Thereafter R. J. Schwab & Sons Co. defaulted in payment of a promissory note held by the Bank.

Rudolph J. Schwab died on the 5th day of February, 1933, while a resident of Dade County, Florida. His Last Will and Testament was admitted to probate in the County Judge's Court in and for Dade County.

The Executrices of the Schwab estate filed inventory and report of appraisal in the County Judge's Court in which they included certain parcels of real estate which were afterwards made the subject of the bill of complaint involved in this suit.

Gertrude A. Schwab and Mabel L. Schwab, of Miami, Florida, were named as the Executrices of the Will.

First Wisconsin National Bank of Milwaukee, appellant here, filed its claim in the Schwab estate within the time prescribed by statute.

The Executrices filed their objection to the claim. Thereafter suit was brought in the Circuit Court of Dade County, Florida, by the appellant on its guaranty contract and judg-

ment was obtained against the Executrices of the estate of Rudolph J. Schwab, deceased.

After judgment was obtained execution was issued and delivered to the Sheriff of Dade County with instructions to levy upon the property described in the inventory. Prior to making the levy the Sheriff searched the records and discovered that the title then stood in the name of Superior Papaya Industries, Inc. Examination of the record revealed that Alma Schwab Komm, Mabel L. Schwab and Gertrude A. Schwab, individually, had filed an action in the Civil Court of Record in and for Dade County, Florida, against Mable L. Schwab and Gertrude A. Schwab as Executrices of the Estate of Rudolph J. Schwab, deceased on an alleged claim against the decedent which had never been filed in the office of the County Judge. In this suit summons was issued on April 13, 1934. The declaration, praecipe for appearance, the defendant's pleas admitting the allegations of the declaration, were all filed on the same date. Final judgment for $1672.24 was entered on April 16, 1934. Execution was issued on the judgment and levy made by the Sheriff on all of the real property appraised at $14,100.00 and listed by the Executrices in their inventory filed in the County Judge's Court.

The Sheriff advertised the property for sale on June 4, 1934, sold all of said real estate to Alida Schwab to whom Sheriff's Deed was made. Alida Schwab executed a deed to Samuel Parlett; Parlett executed a deed to Superior Papaya Industries, Inc. None of these deeds were filed for record until April 3, 1935.

Appellant filed suit in the Circuit Court of Dade County to set aside the judgment in the Civil Court of Record in the Sheriff's Deed to Alida Schwab and the other deeds which followed hers, including the one to Superior Papaya Industries, Inc., on the ground that all of said proceedings

were voidable for fraud. The cause proceeded to final decree and therein the Circuit Court cancelled the judgment of the Civil Court of Record, set aside the deeds referred to and directed the Sheriff to levy upon the real estate and sell the same for the payment and satisfaction of the judgment of the appellant here.

Acting in accordance with the provisions of the decree, the Sheriff made his levy and was advertising the lands for sale when the instant suit was filed.

A restraining order was granted but later dissolved. The Sheriff again advertised said property for sale on the Rule Day in August, 1938. Mabel L. Schwab, one of the appellees, appeared at the Sheriff's Sale and made bids for the various pieces of property and same were stricken off to her. She failed to make good her bids. The property was again advertised for sale by the Sheriff on the Rule Day in September, 1938. The Sheriff again offered the properties for sale and the same were bid in by the appellant and on the appellant's direction Sheriff's Deed was executed and delivered to Peninsular Corporation of Florida.

Appellees' suit for injunction against the sale of the property was based upon a declaration of trust alleged to have been executed and delivered by Rudolph J. Schwab to the appellees dated September 13, 1932. A restraining order was entered by the Court without notice. Motion was filed to dissolve the injunction and order was entered dissolving the same. The dissolution, however, occurred subsequent to the Rule Day on which the sale was to have been made. After motion to dismiss, which was filed on behalf of the appellant, had been denied an answer was filed by appellant.

The case was referred to a Master for the taking of testimony and making of findings of fact and conclusions of law. The Master found that the properties described in the Bill of Complaint were assets of the estate of Ru-

dolph J. Schwab and were subject to the claims of the creditors of the said decedent, particularly to the claim of appellant.

The Chancellor upon hearing exception of the appellees to the report of the Master, entered a final decree sustaining the exception to the Master's Report and decreeing that the declaration of trust was valid and that the property described therein was not subject to the claim of the appellant.

From this decree the appeal was taken to this Court.

The deed of trust, *inter alia,* provides:

"That the party of the first part in consideration of the sum of One ($1.00) Dollar to him in hand paid, the receipt whereof is hereby acknowledged, and in consideration of the natural love and affection and of the covenants of the Trustees herein contained does hereby give, grant, assign, set over, alien, convey, release and confirm unto the Trustees, their heirs, successors and assigns forever, all and singular the following described land, of which the party of the first part is now seized and possessed and in actual possession, situate in Dade County, State of Florida, described as follows:"

Thereafter follows description of property, and then the following:

"To HAVE AND TO HOLD the above described property, with the appurtenances thereto belonging, unto the said Trustees, their heirs, successors and assigns forever in trust, however, for the following uses and purposes and none other; that is to say: to receive the uses, rents and profits of the said premises and to apply the same to the use and benefit of the party of the first part during the lifetime of the party of the first part and at the demise of the party of the first part the said Trustees shall convey said prop-

erties to the Trustees named, nominated and appointed in the Last Will and Testament of the party of the first part."

It also appears from the record that in Schwab's Last Will and Testament it was provided:

"ITEM THREE: I hereby give, will, devise and bequeath all of my property, personal and real, including all of my effect of whatsoever kind and nature, all choses in action, right, properties, actions, claims and demands of which I may die seized, or to which I may be entitled, to my beloved daughters Gerturde A. Schwab and Mabel L. Schwab, to have and to hold the same, unto the said Gertrude A. Schwab and Mabel L. Schwab, but in trust nevertheless, for the following uses and purposes and none other, to-wit:

"In trust to have, hold, receive and collect all of said property and affairs and to pay and discharge all taxes, insurance, charges, repairs, assessments, commissions and other expenses necessary for the preservation of my estate, with full power to grant, bargain, sell, convey, assign, transfer, rent, lease and otherwise to handle and dispose of the same with the privilege of converting investments into cash, investing and re-investing at such time and upon such terms and conditions and at such prices as in the judgment of the said Trustees shall seem safe and expedient; also, to ask, demand, sue for and collect all monies due and owing to me; also to have, operate and control, vote, sell, assign and transfer all stock held by me in any corporation; to execute, sign, seal, acknowledge and deliver, all necessary deeds, instruments of conveyance, receipts, satisfactions, releases and other documents necessary in connection with the property and affairs of my estate, including such as are required to be under seal, and to do and perform such other matters and things in connection therewith as I could do if living; all of which powers shall be

exercised without the necessity of applying to any Court for an order in the premises.

"I hereby direct that my said Trustees not be required to give bond or other security for the faithful performance of the duties herein required."

We deem it unnecessary to discuss the terms of the Will any further than to say that by the Will Schwab exercised the rights and power over the title to the property which he reserved unto himself in the trust deed.

The appellees claim under the trust deed. The trust deed was executed on the 13th day of September, 1932.

It will be remembered that the guaranty contract was executed May 14th, 1931. Therefore, at the time of execution of the trust deed Schwab was liable on that guaranty contract.

In 12 R. C. L. under the caption of Fraudulent Conveyances, Sec. 73, page 549, it is said:

"73. Powers Reserved.—A conveyance of property in trust for the benefit of the grantor is fraudulent as to existing creditors, and in order to make it valid as to subsequent creditors, it must appear that the settlor has divested himself of all rights of ownership in, and control over the property thus conveyed, reserving only to himself the right to receive the income during life. Even in such a case, in spite of any stipulation to the contrary, the income would be considered assets subject to attachment by a creditor of the settlor. Any power of revocation or of subsequent disposition of the property reserved to the grantor will render it void even as to subsequent creditors. A power of revocation virtually leaves the property under the settlor's power, showing that he did not bona fide intend to put the property out of his reach and that it was a contrivance for his own benefit; but actual notice to a creditor before he became so has been held to make a difference in favor of the

conveyance. Where, however, conveyances have been made without, a power of revocation, but the life use of the property has been reserved, such conveyances have been sustained by the court. As to the validity of such conveyances as to grantees or *cestuis que* trust therein, other than the grantor, many jurisdictions have apparently failed to recognize the right of such third persons and have declared such conveyances totally void, but others have recognized the rights of such persons as being independent of the rights of the grantor and have sustained the validity of the conveyance as to such persons even in the cases in which a power of revocation is reserved to the grantor."

To like effect is 27 C. J. 600, under the same caption, Sec. 3344.

In Nolan v. Nolan, 218 Pa. 135, 67 Atl. 52, it is shown that:

"From the record it appears that Helen T. Nolan, a widow, with six children, on May 31, 1898, by deed duly recorded, conveyed certain property to the Reading Trust Company in trust to pay her the income for life in monthly installments, and upon her death to transfer the principal to such persons as she might by will appoint, and, in default of appointment, to her next of kin. The deed recited that it was deliberately made irrevocable but the trustee was authorized to reconvey the property to her if the trustee at any time should think it expedient to do so. On March 6, 1904, she confessed a judgment to Thomas J. Nolan for $2,500, on which he issued an attachment execution summoning the Reading Trust Company as garnishee. The garnishee answered admitting in its hands: Principal of above trust $23,125; income of above trust $370.36; other moneys due Helen T. Nolan, $250.14."

The syllabus of the court reads:

"A person cannot as against creditors, either prior or subsequent, settle his property in trust for his own use for life, and over to his appointees by will, and, in default of such appointment, to use of his lawful heirs in fee."

The court held:

"We do not doubt that a settlor may, as against everybody except creditors, make a voluntary conveyance of his property in trust for such lawful purposes as to him may seem proper, reserving to himself the income during life, and providing in the deed that he shall have the right to exercise the appointment of beneficiaries by will, and, when such a trust is recognized and acted upon during the life of the settlor and the power of appointment is exercised by will, the beneficiaries take the estate according to its terms, for the reason that it has been acted upon and carried out according to the intention of the settlor, and this is true even if the power of revocation is expressly reserved in the deed, but has not been exercised by the settlor in his lifetime. Such a conveyance would be valid as between the parties, even if the enjoyment of the estate by the beneficiaries is postponed until after the death of the settlor. A very different question arises, however, when the rights of creditors intervene. As against existing creditors such a conveyance would be fraudulent and, in order to make it valid as to subsequent creditors, it must appear that the settlor has divested himself of all rights of ownership in, and control over, the property thus conveyed, reserving only to himself the right to receive the income during life, and it must also appear that no other act on his part is required to be done to complete the title in, or make a transfer of the ownership to, the beneficiaries who are entitled to take the same under the terms and conditions of the conveyance. Even in such a case the income would be considered assets subject to

attachment by creditor of the settlor. It is against public policy, and not consonant with natural justice and fair dealing as between debtor and creditor, that a settlor should be permitted to play fast and loose with his property, in such a manner as to have the use of the income during life, and the right of disposing of the principal by will at any subsequent time he chooses to exercise the power, thus giving him all of the substantial benefits arising from the ownership thereof while he has safely put his property beyond the reach of creditors."

The same doctrine is supported in the case of Scott v. Keane, 87 Md. 709, 40 Atl. 1070.

It appears to us that the rule above stated must be followed in the instant case. Here the grantor in the trust deed conveyed the property to the trustees for the use and benefit of the grantor during his life, reserving the power during his lifetime to determine and direct by his last will and testament to designate and name trustees in whom the title shall be vested, with such directions as he might wish to therein incorporate.

The fact that he did name and appoint in the will as trustees the same persons whom he had named in the trust deed as trustees can be of no moment. The effect would have been the same if the trustees named in the will had been strangers to the trustees named in the deed.

It is also true that any time during his lifetime he could have destroyed the will in which his daughters were named as trustees and executed a new and different will naming others as trustees, which would have been just as effective as would be the first will remaining unrevoked.

Appellant has presented as a second question the following: Is a conveyance which was not recorded until after a creditor obtains judgment and of which the creditor had

no notice, actual or otherwise, valid as against the claim of such creditor?

Inasmuch as we must hold that the trust deed was voidable as against creditors under the conditions hereinbefore outlined, it is not necessary for us to discuss this second question.

For the reasons stated, the decree should be reversed and the cause remanded with directions that decree be entered not inconsistent with the views herein expressed.

So ordered.

TERRELL, C. J., and WHITFIELD, BROWN, CHAPMAN and THOMAS, J. J., concur.