**CLEVELAND TRUST COMPANY et, Plaintiff, v. McQUADE et, Defendants.**

Probate Court, Cuyahoga County.

No. 494548.   Decided November 16, 1955.

Squire, Sanders & Dempsey, Cleveland, for The Cleveland Trust Company.

C. P. Von Herzen, Los Angeles, California, for Virginia McQuade.

Van Aken, Whiting, Arnold & Nash, Cleveland, for Charles George Newcomb and Madge Pentoney Newcomb.

Arter, Hadden, Wykoff & Van Duzer, Cleveland, for Shirley Christine Newcomb Kelsey, et al.

Baker, Hostetler & Patterson, Cleveland, for Henrietta Morris Bonsal; Joseph C. Hostetler, Guardian Ad Litem of Stephen Bonsal, et al.

Marshman, Hollington & Steadman, Cleveland, for Richard R. Hollington, Guardian Ad Litem of Cherie Irene Kelsey, et al.

## OPINION

By KINDER, J.

This is an action for a declaratory judgment brought by The Cleveland Trust Company in its several capacities as (a) trustee under a trust agreement, dated February 27, 1922, with Anne Baldwin Schultze, and (b) as executor and trustee under the will of Gouverneur Morris, who died on August 14, 1953, his will having been executed on April 2, 1952. The action involves the interpretation and legal effect to be given the Schultze trust agreement hereinafter called the Trust and the will of Gouverneur Morris of April 2, 1952, hereinafter called the Will and turns on the question of the effect, if any, of the Rule against Perpetuities in respect of these documents and the interests sought thereby to be created.

The case submitted on a stipulation of fact is this: The Trust became irrevocable upon the death of the donor on July 11, 1922. By its terms the trust estate was divided into two parts, one to be held for the benefit of donor's nephew, Gouverneur Morris, and the other for the benefit of donor's niece, Henrietta Morris Bonsal. The case concerns the Gouverneur Morris share and the Trust provided that upon the death of Gouverneur Morris, his share of the estate should "vest in and be distributed to his nominees and appointees by his last will and testament." Morris died August 14, 1953, some thirty-one years after the death of the grantor of the Trust. His Will provided for (a) the disposition of the property as to which the Trust gave him the power of appointment, and (b) the devise and bequest of his property otherwise.

The issues here presented relate to the testator's disposition of the property as to which he had the power of appointment. The will provided:

"* * * In the exercise of such power of testamentary appointment, I hereby nominate and appoint to receive the share of said trust estate, or the balance thereof remaining, held for my benefit, The Cleveland Trust Company of Cleveland, Ohio, as Trustee, to be held by it upon the trusts and for the uses and purposes, and subject to the terms and conditions hereinafter set forth, to-wit:"

In so far as concerns the continuance or duration of the trust thus created, provision is made for its termination, as follows:

"The trust hereby created shall terminate when such of the following, to-wit: Virginia McQuade, Ralph Newcomb, Charles George Newcomb, Madge Pentoney Newcomb, Doris Frick, Robert Frick, Jr., Shirley Kelsey and Charles Newcomb Kelsey, as were in being February 23, 1952, are all deceased, and upon such termination the principal then comprising the trust estate and any accumulated income shall be paid over and delivered as follows:"

The trust, after directing a limited income provision for life to four persons, provides for the disposition during the continuance of the trust of the remaining net income of the trust estate which is payable, share and share alike, to Charles George Newcomb and Madge Pentoney Newcomb "so long as both of them shall live" and to their survivor so long as such survivor shall live. Thereafter follows elaborate provision for disposition after the death of these persons to numerous beneficiaries during the period of the trust of the income from the trust estate. It remains to be remarked that this trust contains in Item II (c) a provision against the pledge, encumbrance, sale, transfer or alienation by any beneficiary, in which event it is provided that any such respective interest "shall immediately cease and determine." There then follows, as is usual in clauses of this kind, the provision which gives to the trustee discretion as to the matter of payments of income or principal to the beneficiary involved.

This disposition by Morris in the exercise of his general testamentary power is asserted to be invalid in whole or in part by reason of the Rule against Perpetuities the power to appoint having been created in July, 1922 and its exercise having occurred in August, 1953.

Enough has been said to indicate that the controlling question here presented is this: Is the period provided for by the Rule against Perpetuities for the vesting of interests i. e. life or lives in being plus twenty-one years, to be computed from July 11, 1922, the day on which the Trust became irrevocable by reason of the death of its donor or from August 14, 1953, the date of the death of Gouverneur Morris and therefore the effective date of the exercise by him of the testamentary power given by the Trust?

Precisely this question comes down to whether a general power exercisable only by will is of a nature and character as falls within the rule applicable to a general power to appoint by deed or will in which the period of the Rule is computed from the time of the exercise of the power or whether the period of the Rule must be applied as in the

case of a special or limited power where the exercise thereof must for the purpose of the Rule be related back to the creation of such special power and to its date. This question, so far as the Court has been advised, has not been determined in this state. It has however been considered in other jurisdictions and the results are in conflict.

The Rule against Perpetuities in this state is contained in §2131.08 R. C., and is in part as follows:

"No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after a life or lives in being at the creation of the interest. * * * It is the intention by the adoption of this section to make effective in Ohio what is generally known as the common law rule against perpetuities."

The parties here concede that the provision in the Trust that real property of the trust estate "shall be treated as equitably converted into personalty" permits the Court to apply the Ohio Rule against Perpetuities and dispenses with any inquiry respecting the effect of the Rule in the several jurisdictions where the real estate affected by the Trust was located, e. g. Montana and Tennessee.

It is obvious that the Rule itself throws no particular light upon the matter under consideration as the point concerns the question of its interpretation having in mind the objects of the Rule and what it is designed to reach.

In Gray on the Rule against Perpetuities, 4th Ed. Sec. 526 (1942) the question is considered and the position taken by this leading authority is that while the question is not free from difficulty nevertheless on principle and weight of authority appointments general in scope but exercisable only by will must unlike powers to appoint by deed or will, be for the purpose of the Rule referred to the date of the creation of the power. Gray proceeds—Sec. 526.2—to base his position upon the case of Powell's Trusts, 39 L. J. Ch. 188 (N. S.) (1869) and upon the view that from the standpoint of the Rule a donee of a general testamentary power is not practically the owner of the estate in the same sense as a donee of a general power who can exercise it by deed or will. This view of Gray is, of course, entitled to a very great respect and has received wide and in some instances unquestioned acceptance in the courts. On the other hand, Gray's view has been questioned, not only on the basis of the decisions referred to by him but also in respect of the nature and character of the right of the donee of a general testamentary power considered from the standpoint of the Rule.

In so far as concerns the decisions relied upon by Gray, it has been pointed out that Powell's Trusts, supra, has been repudiated in subsequent decisions of the English and Irish Courts i. e. Rous v. Jackson, L. R. 29 Ch. D, 521 (1885), In re Flower, 55 L. J. Ch. (N. S.) 200 (1885) and Stuart v. Babbington, L. R. 27 Ir. Rep., 551 (1891). An examination of these cases confirms this and these latter decisions are important whether the result constitutes the common law of England on the point and therefore recognizable as such in this state—R. R. v. Keary, 3 Oh St 202—or are treated as an authority having the effect of a well considered statement of the law.

Without attempting a detailed consideration and analysis of the

conflicting cases on the point, it seems to the Court that the most discriminating treatment from the standpoint of the case law on the subject lies with the conclusion that in so far as a general testamentary power is concerned the period provided for by the Rule runs from the time of its exercise rather than the date of its creation. An example of a well considered authority to this effect is Miller v. Douglass, 192 Wis. 486, 213 N. W. 320. An example to the contrary is Minot v. Paine, 230 Mass. 514, 120 N. E. 167. The conflicting views of writers on the subject are evidenced in Gray on Perpetuities, supra, Sec. 526.2; Kales, 26 Harvard Law Review, 64 and Gray's rejoinder thereto in the 4th edition of his work, Appendix L. Sec. 949, 950.

In so far as concerns the object of the Rule and the stated reasons for relating the exercise of a general testamentary power to the date of its creation, it seems impossible to conclude that such a power is in the nature of a special power which by reason of necessity must be related back to its creation. In the latter instance the hands of the donee are tied by the imposed conditions and his disposition of the property is therefore restricted by provisions representing the expressed intention of the donor. On the contrary in the case of a general testamentary power of appointment no such considerations exist because there is no restriction on the donee of the power so far as its exercise is concerned.* While it is true that of necessity he cannot appoint to himself, he may appoint to his estate or whomsoever he chooses. The fact that such a donee cannot appoint to himself seems to be the only limitation that is said to distinguish the matter from the general power to appoint by deed or will. But even the latter donee is not the absolute owner of the property. Gray regards him as only "practically the owner." At all events we are here concerned only with the Rule against Perpetuities and from that standpoint why should a distinction be drawn between a power to appoint by deed or will and a power to appoint by will only? In the former case the donee may never exercise his power by deed, but exercise it by will or may never exercise the power at all. In the case of a testamentary power while the donee may exercise his power by will only it is not perceived why for the purpose of the problem under consideration the case should turn on a hypothetical possibility or event which in the case of the donee of a power to appoint by deed or will may never eventuate and this would be so if such donee possessed the power to appoint by deed only. Again from the standpoint of the Rule, one of the objects of which is to preclude the suspension of the marketability or transferability of property or interests, it is clear that the life interest of both kinds of donees would be computable in value, assignable in nature and reachable by creditors. When with the life estate there is coupled the power of appointment, the general power in either of these cases must be considered an incident to the estate granted and in either and any event it is not perceived but that a general power to appoint in either instance may not be controlled as to its future exercise either

---

*The question posed in the briefs and argument as to whether the donee here—Morris—exercised the power granted in a manner or to an extent authorized by the original Trust is later considered.

for the purpose of transfer or assignment as security for a loan to the donee. This merely poses a problem of safeguarding or insuring the control of the exercise of such power for the purpose of the transaction and seems to the Court a problem for which the ingenuity of counsel might be adequate. There thus disappears the objection that under the facts of this case the marketability or transferability of the property involved was suspended contrary to the Rule—an objection which as has been generally agreed the Rule was designed to prevent.

The matter may be viewed from another standpoint. As has been pointed out the Rule against Perpetuities developed as a rule restricting future interests in specific land. Simes—"Public Policy and the Dead Hand"—The Thomas M. Cooley Lectures, University of Michigan Law School (1955). But in the case at bar we are concerned with trusts dealing with personalty and this is so both as to the original Trust and the trust created by the Will of the donee in the exercise of his power of appointment. Here as Simes points out it does not follow that under such a form of distribution of property and interests therein such property becomes unproductive within the meaning of the Rule. In both the original Trust and the trust created by the Will of the donee the respective trustees are given the widest power of sale and investment. In this situation Simes observes in his "Public Policy and the Dead Hand," supra, Pages 40 and 41:

"In the first place, the future interest with which the Rule against Perpetuities is concerned is nearly always an equitable interest in a trust. The modern trust instrument, if well drawn, will contain broad powers of sale and reinvestment. * * *

Moreover, not only is the trustee empowered by the terms of any well drawn trust instrument to sell and reinvest in productive property; the law requires him to do so. One of the duties imposed by law upon trustees is to use reasonable care in making the trust property productive."

It is therefore open to say that if, as has been generally held, the Rule is inapplicable from these standpoints to a case of a donee of a power to appoint by deed or will, no possible reason under the facts of the instant case, remains for its application to a donee of the general power to appoint by will only. In addition to the foregoing considerations the courts have treated the two instances i. e. the case of a donee with power to appoint by will or deed and the case of a donee with power to appoint by will only, on a similar basis. In both cases it has been decided that the appointed property may be reached in equity by creditors in either case after the appointment. Brandeis v. Cochrane, 112 U. S. 344; Johnson v. Cushing, 15 N. H. 298. **Donley's Adm'rs. v. Shields, 14 Ohio 359 (1846)** cited to establish that devisees under testamentary power of appointment take the estate unencumbered by the donee's debts is not to the contrary. This was an action in assumpsit and not in equity and without undertaking a detailed analysis of the case it was held that such form of action did not lie and it was pointed out that if any action were appropriate it would be by way of a bill in chancery, the Court indicating:

"Were the fund needed, the proper way to reach it, if to be reached at all through the aid of the courts of this state, would seem to be by

bill in chancery, bringing into court all the devisees, legatees, and heirs, so that a fair and just contribution of the burden might be made among them, and so that the legacies might be subjected according to the equities subsisting between the parties."

Again in both instances the property conveyed under the power is subject to inheritance taxes as coming from the estate of the donee, Sec. 5731.02 R. C., Sec. D; United States I. R. C. Sec. 2041 (a), (b), a result inconsistent with the concept that in case of a testamentary power of appointment its exercise must be related back to the original grant. 19 Columbia Law Review, 63.

The suggested distinction between the nature of the interest of a donee of a power exercisable by will only on the one hand, and the donee of a power exercisable by deed or will on the other, seems to the Court to be a shadowy one at best and whatever may have been the original basis of such distinction the result would be to impair, by what the Court considers as an unjustifiable technicality, the right of the owner of property to grant to a donee a valid right to exercise an unrestricted power of testamentary appointment and thereby to "disrupt the prudent dispositions of reasonable men." The donor of such general testamentary power of appointment must be presumed as having intended the conveyance to the donee of a power of such extent. It is obvious that the application of the Rule against Perpetuities as it is here sought would thwart the obvious intention of the donor to give to the donee such unrestricted right to determine in whom, upon the donee's death, the property should vest and to whom it should be distributed.

Further, in view of the increasing use in modern times of the provision for general testamentary power of appointment, it seems to the Court that such power, if it is to be considered as having any meaning or effect at all, ought, as already pointed out, to be considered as incident to the estate granted to the donee. To interpret the Rule as requiring that the exercise by a donee of a general testamentary power to be related back to the date of the creation of the power would seriously compromise such donee in the exercise thereof and thus defeat the expressed intention of the donor. This is so because counsel presently attempting to draft a will providing for the exercise of such power would out of caution and to remove the matter from all doubt, be compelled, in considering the effect of the Rule against Perpetuities, to so limit disposition of the property covered by the power as to satisfy the technical application of the Rule here pressed. This would mean in the instant case that a period of thirty-one years already passed from the date of the creation of the power would have to be taken into consideration so far as concerns the present disposition by the donee of the property in the exercise of his general testamentary power.

Finally, in view of the demonstrated similarity of the nature of the interest held by a donee of the power to appoint by deed or will on the one hand and that of the donee a general testamentary power on the other, and in further view of the fact that the precise question here involved has not been determined in this state, it seems that the Court is free to declare what should be the interpretation of the Rule from the standpoint of judicial policy of the state. From that standpoint and as

confined to the precise question, the Court holds that there is no difference between a general power to appoint by deed or will and a general power to appoint by will only and that in the latter case, as in the former, the period of the Rule is to be computed from the date the power is exercised. The Court concludes for this reason and other considerations heretofore expressed, that the exercise by Morris of his possessed power of appointment is to be dated from the time of its exercise and not from the date of its creation. Nor does the Court find from its examination of the authorities that its conclusion in this respect is contrary to the policy of this state as expressed either by way of statute or judicial decision.

In connection with the conclusion just expressed it may be remarked that the Rule against Perpetuities has from the standpoint of its relation to modern developments in respect of the use and distribution of property been the object of recent and highly critical treatment. Reference has already been made to The Thomas M. Cooley Lectures delivered by Lewis M. Simes at the Law School of the University of Michigan and published in 1955 under the title of "Public Policy and the Dead Hand." These lectures will be found to contain his criticism of the Rule and his suggestion as to appropriate remedies. Mr. Simes is not alone in this criticism. W. Barton Leach, a recognized authority on the subject, considers the Rule in 65 Harvard Law Review, 721 (1952) and this under the title "Perpetuities in Perspective: Ending the Rule's Reign of Terror." Mr. Leach's treatment of the Rule was also published in England in a companion article 68 Law Quarterly Review, 35, under the equally significant title "Perpetuities: Staying the Slaughter of the Innocents." While the treatment accorded the Rule by Mr. Leach may be inferred from these titles, one of his comments seems here apprópos:

"The Rule persists in personifying itself to me as an elderly female clothed in the dress of a bygone period, who obtrudes her personality into current affairs with bursts of indecorous energy. Time was when she stood at the center of family activity, necessary to the family welfare. A new generation with new problems has arisen; yet she persists in treating ancient issues as present realities and in applying her own familiar solutions. Asserting an authority derived from an earlier day, she insists that a stockade be built around the house to protect it from Indians even though the Indians are memories, * * *"
and again after pointing out that income and inheritance taxes have eliminated any threat to the public welfare from great accumulations of land or capital Mr. Leach observes:

"It does no harm to continue the Rule as a restraint on the whims of an occasional refugee from the nineteenth century, but we should make sure that it is limited to that cautionary function and does not disrupt the prudent dispositions of reasonable men.

"The old lady of our allegory must learn to sit by the fire and confine her activity to a few words of wise advise from time to time; she must forego this skittish activity that has caused such trouble and damage in the household." 65 Harvard Law Review, 725, 727.

Compare also Rules against Perpetuities, 94 Trusts and Estates, 832; Simes, Is the Rule against Perpetuities Doomed?, 52 Mich. L. Rev. 179; Leach, Perpetuities Legislation, 67 Harv. L. Rev. 1349.

The foregoing is referred to not as authority for the decision here reached on the precise point considered but as justifying to a substantial extent the right of the Court to subject to scrutiny and to question the view of authorities founded upon economic considerations which, if valid at the time of the pronouncement of the Rule are in great measure non existent under modern conditions.

We turn now to the questions otherwise asserted as to the validity of the trust created by Morris in the exercise of his power of appointment. It is urged in effect that the trust estate created by him represents an unauthorized exercise or an exercise in its extent unauthorized by the power of which he was donee. But the Court finds the power granted adequate for its exercise. The Trust says that Morris' share of the estate should "vest in and be distributed to his nominees and appointees by his last will and testament." Giving these words their usual and ordinary meaning the power is unrestricted in scope. It seems beside the point that, instead of distributing the property outright to one or more persons, the donee accomplished the distribution by way of a trust i. e. with a trustee in whom was vested the property to be used for the defined benefits of a variety of persons in whom he apparently was interested. The trust in question terminates within lives in being at the effective date of the appointment. A trust is available for such a purpose. 1 Scott on Trusts, 137; **Trust Company v. Claflin, 49 Abs 29;** 73 N. E. (2) 388. Under the power Morris had the right of distribution and the right to determine the beneficiaries thereof and the extent of their respective interests. The Trust is elaborate and detailed but this does not, under the circumstances, render it invalid or in any way defective. Did he effect this distribution in a manner authorized by law? The Court holds that he did and finds nothing in the Rule against Perpetuities which would strike down the power of distribution exercised on August 14, 1953. It is again to be emphasized that the corpus of this estate is personalty as to which a trust under modern law is a convenient and appropriate method of distribution according to testator's desire and intention. The Trust terminates at the end of specified lives in being at the time of the effective date of the will. All of the interests or estates created by the Trust vest within the life or lives in being on August 14, 1953. A permissible interpretation to that effect is the one which must be adopted. **Tax Commission v. Oswald, 109 Oh St 36, 48; Linton v. Laycock, 33 Oh St 128; Wurst v. Trust Company, 37 Abs 393; Bolton v. Bank, 50 Oh St 290.**

The only condition which would tend to divest an interest of any one of the beneficiaries was the so-called spendthrift provision of the Morris Trust and this only at the discretion of the trustee as to time, amount and duration. Nowhere in this Trust is an express provision against vesting, a fact which distinguishes it from the cases which were brought to the attention of the Court on this point.

Under all the circumstances the Court finds that exercise by Morris of the power given him in the Anne Baldwin Schultze Trust was in all respects valid. An order may be drawn accordingly with exceptions to those deeming themselves thereby aggrieved.